KEYSTONE INSURANCE COMPANY *v.* DEAN RAFFILE
(14479)

PETERS, C. J., BORDEN, NORCOTT, KATZ and F. X. HENNESSY, Js.

Argued December 8, 1992—decision released March 30, 1993

*William F. Gallagher,* for the appellant (defendant).

*Thomas H. Blair III,* with whom was *Francis J. Wynne,* for the appellee (plaintiff).

NORCOTT, J. The dispositive issue in this appeal is whether an individual claiming to be injured in a one car, force and run accident[1] must provide independent corroborative evidence of the accident in order to recover uninsured motorist benefits from his insurance carrier. The plaintiff, Keystone Insurance Company, moved in the trial court to vacate an arbitration award made to the defendant, Dean Raffile, because the defendant had not proved his claim of a force and run accident by corroborative evidence. The trial court vacated the arbitration award, concluding that our decision in *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 593 A.2d 498 (1991), required the defendant to provide corroborative evidence of his version of the accident and that the defendant had failed to satisfy that requirement. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now reverse.

The following facts are relevant to this appeal. On September 3, 1986, the defendant was severely injured in a one car accident in North Haven after his vehicle swerved off the road into a utility pole. The defendant lost consciousness after the impact and awoke in the emergency room of Yale-New Haven Hospital. The defendant was hospitalized until October 7, 1986. During that time, he underwent seven operations to correct a fracture of the neck, and wore a halo brace bolted into his head for ten days to provide traction until sur-

[1] A force and run accident is one in which an unidentified vehicle forces the driver of another vehicle into an accident without making contact with that other vehicle.

gery could be performed. The testimony of the defendant and his wife, as well as hospital records, revealed that the defendant was in extreme pain and was severely distressed about his treatment, displaying volatile emotions, disorientation and lack of coherence and rationality. After his release from the hospital, the defendant went to Florida until March, 1987, to stay with his parents while he recuperated.

The defendant's wife, Lucille Raffile, did not discuss the details of the accident with the defendant while he was hospitalized because he did not appear to be coherent or rational. On the morning after the accident, she called the plaintiff to report the accident and stated that the defendant had fallen asleep behind the wheel and had hit a tree or a telephone pole.[2] Ten days later she submitted a no-fault benefits application to the plaintiff and described the accident similarly.

On August 29, 1988, the defendant made an uninsured motorist claim against the plaintiff, claiming that an unknown vehicle that had entered the road in front of the defendant's vehicle had caused him to swerve and to strike the utility pole. The plaintiff contested this claim and the matter was ultimately submitted to arbitration. A panel of three arbitrators heard the case on divers days between December, 1989, and September, 1991. The principal issue was whether the defendant was entitled to coverage because of the absence of contact between the unidentified vehicle and the defendant's vehicle.[3] Because this court was about to decide the requirement of contact in an uninsured

---

[2] The defendant's wife testified before the arbitration panel that her impression that the defendant had fallen asleep at the wheel may have come from a newspaper account of the accident published that same morning.

[3] The plaintiff's policies in effect at the time of the accident included within the definition of an "uninsured motor vehicle" a motor vehicle "[w]hich is a hit and run vehicle whose operator or owner cannot be identified and which hits . . . you or any 'family member' . . . ."

motorist claim in *Streitwieser* v. *Middlesex Mutual Assurance Co.*, supra, the arbitration panel postponed briefs and oral argument until that decision was issued.

The defendant testified to the arbitration panel that, during the third week after his second operation, he had recalled that he had been run off the road by a yellow station wagon that had pulled out of a private driveway in front of him.[4] The defendant had relayed this information to his brother, Arthur Raffile, a North Haven policeman, the day after the accident.[5] The defendant's brother testified that he had independently investigated the accident on the basis of what the defendant had told him. The investigating officers told the defendant's brother that no one had smelled liquor on the defendant's breath the night of the accident and that no motor vehicle citation had been issued to the defendant after the accident.[6] The defendant's brother also testified that he had completed the motor vehicle accident report for the defendant, which reflected that an unidentified vehicle had been the cause of the accident.[7]

[4] The defendant testified before the arbitration panel: "[A]s I came around the curve, from out of a dirt driveway came a yellow 1975 or 1976 Pontiac or Chevrolet station wagon; I had a choice to get out of the way or try to swerve around him, and when I did, I saw a telephone pole, and I dived [sic] to the floor of my car and broke my neck and scarred up my face and broke my shoulder." The defendant also testified that he did not report this to investigating officers because they did not come to see him and he could not see them because of his condition.

[5] The defendant apparently did not recall telling his brother how the accident had occurred because he testified that his first recollection of the accident was several weeks later.

[6] Evidence had been introduced that the defendant had consumed approximately a full bottle of wine on the night of the accident between 6 p.m. and 12:30 a.m. The defendant's brother testified that routine police procedure would be to obtain a warrant for an individual's medical records if liquor is detected on a driver's breath after a serious accident, which was not done with respect to the defendant. The defendant's brother also testified that if no other car had been involved in the accident there might have been a motor vehicle violation on the part of the defendant, but that the defendant was never charged with one after the accident.

[7] The motor vehicle accident report reflected in pertinent part: "[The] unknown vehicle entered the road from the right out of a private drive.

The defendant's wife testified at the arbitration hearing that during the defendant's hospitalization he had made references to headlights and a car, but that she had not taken the matter seriously. She also testified that she had not discussed the details of the accident with the defendant until he had returned from Florida in March, 1987, and that she had not reported this new information to the plaintiff because she thought the defendant had done so. An expert accident reconstructionist introduced by the defendant testified that, in light of the defendant's version of the accident, the police report and his own investigation, it was reasonable for the defendant to have failed to see the other vehicle and that the defendant's evasive action had been reasonable.

The police accident report noted that no skid marks were found in the area of the accident and that there were no witnesses to the accident. An expert for the plaintiff testified that the defendant's serum blood alcohol level, as taken from the hospital records, equated to approximately 0.15% to 0.24% of body weight. The defendant admitted to having consumed approximately one bottle of wine on the night of the accident between 6 p.m. and 12:30 a.m.

A majority of the arbitrators found for the defendant on the issue of liability[8] and assessed his damages at $450,000. The majority of the panel also attributed 50 percent comparative negligence to the defendant and, accordingly, reduced his award by that percentage plus $16,600 for basic reparations benefits already paid. The net award to the defendant, therefore, totaled $208,400.[9]

To avoid colliding with the unknown vehicle, vehicle #1 [the defendant's] cut into the left lane on the curve and struck a utility pole on the left shoulder of the roadway."

[8] One arbitrator dissented, finding that there was insufficient proof to sustain the existence of a phantom car.

[9] The plaintiff had issued a policy to the defendant covering three vehicles at $100,000 each. The parties stipulated that this policy was in effect

The plaintiff subsequently applied to vacate the arbitrators' award pursuant to General Statutes § 52-418[10] on the grounds that: (1) the award contravened public policy because the defendant had failed to prove his claim of a force and run accident by independent corroborative evidence; (2) the award was arbitrary and contrary to law because the majority of arbitrators either had failed to apply or had misapplied the corroboration requirement; and (3) the defendant had failed to meet the requirements of his insurance contract by failing to notify the police of the force and run driver.[11]

at the time of the accident and that the aggregate uninsured motorist coverage amounted to $300,000.

[10] "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the state board of mediation and arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

[11] The defendant, in response, filed a motion to confirm the arbitration award pursuant to General Statutes § 52-417, which provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall

The trial court granted the plaintiff's application to vacate the award. The trial court reasoned that our decision in *Streitweiser* required the defendant to provide corroborative evidence of his version of the accident and that, because all the testimony presented emanated from the defendant's representations, the defendant had failed to provide such corroborative evidence.

The defendant contends on appeal that the trial court improperly interpreted our decision in *Streitweiser* to require a claimant to supply independent corroborative evidence that a force and run accident occurred in order to recover uninsured motorist benefits for injuries resulting from a force and run accident.[12] The defendant argues that this court did not set a standard requiring corroborative evidence to prove force and run accidents in *Streitweiser,* and that a claimant's burden of proof by a preponderance of the evidence provides sufficient assurance against the risk of fraudulent claims. We conclude that there is no legal requirement for independent corroborative evidence of claims involving force and run accidents.

In *Streitweiser,* we held that a physical contact requirement, if an unidentified vehicle causes the claimant's accident, is inconsistent with the public policy underlying statutorily mandated uninsured motorist

---

grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419." Both motions were heard by the trial court on October 28, 1991, and the defendant's motion was denied on November 6, 1991.

[12] The defendant also argues that the trial court improperly: (1) determined that the defendant had caused his own injuries because there was substantial evidence to confirm the arbitrators' award; and (2) determined that the defendant had failed to corroborate his claim. Because we agree with the defendant that the trial court improperly read *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 593 A.2d 498 (1991), to require corroborative evidence to collect uninsured motorist benefits in a force and run accident, we do not directly address these remaining claims.

coverage. Id., 381. In so deciding, we joined a host of other jurisdictions that had similarly reasoned that a physical contact requirement is "an unjustifiable deviation from the legislative goals of uninsured motorist legislation."[13] Id. We did note in dictum, however, that the concern that the absence of a physical contact requirement would encourage fraudulent claims was legitimate. Therefore, we stated that "some standard of corroboration to support a claimant's contention that the injuries for which compensation is sought were indeed caused by a hit-and-run motorist" might be appropriate. (Internal quotation marks omitted.) Id., 382–83. We also recognized our authority, even in the absence of a statutory foundation, to "require a claimant, if he is put to his proof, to present some evidence to corroborate his representation of how the accident occurred." Id., 383.

In Streitweiser, however, we expressly did not impose a requirement of corroborative evidence for noncontact uninsured motorist claims because the parties in that case had stipulated to the existence of a causal relationship between the plaintiff's injuries and the unidentified vehicle. Id. We therefore neither reached the issue of whether corroborative evidence would be required nor established such a requirement as a matter of law. The issue that we left unresolved in Streitweiser, namely, whether a claimant is required to present some evidence to corroborate his representation of a force and run accident, is squarely before us today.

To begin our analysis, we recognize the valid concerns of insurance companies regarding the potential for fraudulent claims in cases involving an unidentified tortfeasor. We acknowledged this concern in Streit-

---

[13] See Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371, 381–82, 593 A.2d 498 (1991), for a comprehensive list of the jurisdictions that have either rejected or accepted the physical contact requirement.

*weiser* when we stated: "In the absence of physical contact, there is a risk that a claimant may conjure up a phantom motorist to explain a one-car accident for which the claimant was in fact entirely responsible." Id., 382. Indeed, some jurisdictions that have rejected a physical contact requirement now oblige a claimant to support his allegations of a phantom driver with some corroborative evidence of the accident. See, e.g., *Rogers* v. *Schuman-Mann Supply Co.*, 197 Ga. App. 59, 397 S.E.2d 463 (1990); *Marakis* v. *State Farm Fire & Casualty Co.*, 765 P.2d 882, 885 (Utah 1988); *Gobin* v. *Allstate Ins. Co.*, 54 Wash. App. 269, 271, 773 P.2d 131 (1989). Also, some states have an expressed corroboration requirement in the governing statute. See, e.g., 24 Ga. Code Ann. § 33-7-11 (b) (2) (1992); 49 Or. Rev. Stat. Ann. § 743.792 (g) (B) (1989); Utah Code Ann. § 31A-22-305 (5) (1991); 5 Wash. Rev. Code § 48.22.030 (8) (a) (1992).

Other jurisdictions, however, have rejected both a physical contact and a corroboration requirement as contrary to public policy and untenably contrary to the legislative purpose behind uninsured motorist statutes. See *Lanzo* v. *State Farm Mutual Auto Ins. Co.*, 524 A.2d 47, 50 (Me. 1987); *Perez* v. *American Bankers Ins. Co.*, 81 N.J. 415, 419, 409 A.2d 269 (1979) (imposition of the requirement of corroboration in noncontact cases adds a substantial condition to the mandated coverage not sanctioned by the legislature); *Pin Pin H. Su* v. *Kemper Ins. Cos./ American Motorists Ins. Co.*, 431 A.2d 416, 419 (R.I. 1981). These jurisdictions burden the claimant with the same evidentiary standard of proof as in traditional civil actions. We choose to join this latter group.

At the outset, we note that neither our uninsured motorist statute; General Statutes § 38a-336;[14] the per-

---

[14] General Statutes § 38a-336, formerly § 38-175c, provides in pertinent part: "UNINSURED MOTORIST COVERAGE. (a) (1) Each automobile liability

tinent regulations,[15] nor the defendant's insurance policy mentions or requires corroborative evidence to support a force and run, uninsured motorist claim. It is well established that the public policy derived from the uninsured motorist legislation is that " 'every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute.' *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982).'' *Streitweiser* v. *Middlesex Mutual Assurance*

insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.''

[15] The Regulations of Connecticut State Agencies, § 38a-334-6, formerly § 38-175a-6, provides in pertinent part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS

"(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent.''

*Co.*, supra, 377. The public policy embodied in our uninsured motorist legislation " 'favors indemnification of accident victims unless they are responsible for the accident.' Widiss, A Guide to Uninsured Motorist Coverage (1969) § 2.9, p. 29." *Harvey* v. *Travelers Indemnity Co.*, supra, 250. Therefore, any limitation on the ability of an individual injured by an uninsured motorist to recover benefits for his injuries will have to bear close scrutiny.

We also recognize, however, that the uninsured motorist legislation is designed for the truly innocent and not for the fraudulent policyholder. In determining whether a corroboration requirement is necessary in force and run accidents we must, therefore, balance: (1) the prominent public policy favoring uninsured motorist coverage; (2) the potential for a flood of fraudulent claims; and (3) the potential loss of valid claims that cannot be corroborated by evidence independent of the claimant's version of the facts. In weighing these concerns, we conclude that the scale must tip in favor of the claimant and that a standard requiring corroborative evidence independent of the claimant's testimony is not warranted.

The plaintiff argues that allowing a claimant to recover in cases where there are no witnesses and no physical contact, without requiring corroboration, creates a situation that is ripe for fraud. The specter of fraudulent claims, however, should not be determinative of this issue. The fact that some claims might be manufactured by unscrupulous individuals cannot justify the wholesale rejection of all claims in which injury is caused by an unidentified driver simply because the injured party lacks third party witnesses or physical evidence of an unidentified driver.

Indeed, the potential for fraudulent claims was also at issue when the physical contact requirement was

eliminated in many jurisdictions. For instance, in rejecting an argument that concern for fraud supports the need for a physical contact requirement, the Supreme Court of Hawaii reasoned as follows: "A claimant with a fraudulent claim can bolster the same, if necessary, by damaging his own car to leave apparent proof of the requisite 'physical contact' with a non-existent 'unidentified vehicle.' The contractual 'physical impact' requirement thus not only sweeps too broadly, but also not broadly enough, to accomplish its only justifiable and statutorily permissible purpose, the prevention of frauds." *DeMello* v. *First Ins. Co. of Hawaii, Ltd.*, 55 Haw. 519, 529, 523 P.2d 304 (1974). Similarly, a corroboration requirement would accomplish little to prevent fraud if a claimant, so inclined, would bolster his fraudulent claim with sham "eyewitnesses" or manufactured corroborative evidence.

The lack of a corroboration requirement, like the elimination of a physical contact requirement, does not mean that the claimant no longer carries the burden of proving by a preponderance of the evidence that the accident occurred as claimed. In discussing its rejection of the physical contact requirement, the Utah Supreme Court wrote: "Apparently, the sole justification for the physical contact requirement is its alleged evidentiary value in providing objective evidence which corroborates the victim's account of the accident. However, its rejection does not relieve the insured's burden of proving his or her case. If the insured can prove to the satisfaction of the fact finder that the accident occurred, he or she may be entitled to recover regardless of the actuality of physical contact." *Marakis* v. *State Farm Fire & Casualty Co.*, supra, 884–85. Likewise, whether a force and run accident occurred as the claimant asserts, despite the absence of corroborative evidence, is a pure question of fact to be determined

by the trier. Cf. *Brown* v. *Progressive Mutual Ins. Co.,* 249 So. 2d 429, 430 (Fla. 1971).

The claimant will satisfy his or her burden of proof if the evidence induces in the mind of the trier a reasonable belief that it is more probable than not that the accident occurred in the manner in which the claimant asserts. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.4.1 (a). The claimant's evidence need not negate all other possibilities or exclude every other reasonable conclusion. *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 318, 240 A.2d 881 (1968). Admittedly, in a case such as the one presently before us, the evidence might be scarce. There may be no eyewitness, the physical evidence at the accident scene may evince nothing more than the fact that an accident occurred, and an accident reconstructionist may only be able to give an expert opinion primarily based on the claimant's own account of the accident. The paucity of evidence, however, should not defeat the claimant's right to persuade the trier that his claim is valid.

If the extent of a claimant's evidence is his or her account of how the accident occurred, then the claimant's credibility will be tested and evaluated by the trier of fact as in any civil action. "The credibility of a witness is a matter for the jury and, except in rare instances, there is no requirement that a witness's testimony be corroborated by other evidence." C. Tait & J. LaPlante, supra, § 7.30.1.[16] The absence of corrobo-

---

[16] Indeed, in Connecticut jurisprudence we find several instances where corroborating evidence is specifically not required. See Public Acts 1974, No. 74-131, repealing General Statutes § 53a-68 (testimony of the alleged victim of a sex offense need not be corroborated to sustain a conviction); *Jarrett* v. *Jarrett,* 151 Conn. 180, 182, 195 A.2d 430 (1963) ("if a ground for divorce has been clearly established, a party is not precluded from a judgment dissolving the marriage by reason of the fact that his evidence lacked corroboration by other witnesses"); *In re Robert K.,* 12 Conn. App. 585, 589–90, 532 A.2d 1319 (1987) (uncorroborated testimony of a child abuse victim is sufficient).

ration, of course, may affect the trier's decision as to the sufficiency of the evidence and the burden of proof; C. Tait & J. LaPlante, supra; but this factor goes to the weight of the claimant's case rather than to his or her ability to bring the case before the trier. We see no reason why the traditional tests of credibility, testimony under oath and cross-examination, coupled with the claimant's burden of proof, are insufficient to provide protection against fraudulent claims.

Where the traditional tests of credibility attend to an insured's claim for coverage, a rigid corroboration rule works too harshly on some of those whom the broad remedial purpose of the uninsured motorist legislation is to benefit in the first place. We conclude, therefore, that a claimant alleging that an accident was caused by an unidentified vehicle, even in the absence of physical contact, need not present independent evidence to corroborate how the accident occurred.

The plaintiff argues as an alternative ground to support the trial court's decision that, even if we reject a corroboration requirement, the burden of proof on a claimant should be "clear and convincing evidence" to assure that only valid claims are compensated. The plaintiff argues that because a "clear and convincing evidence" standard is required to prove fraud; *Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982); the same standard is also appropriate here because of the potential for fraudulent claims. In essence, the plaintiff is urging us to adopt a standard that would put any claimant under circumstances similar to those of the defendant in the position of disproving fraud, regardless of whether fraud is asserted by the insurer as a defense. This we refuse to do.

We recently rejected the invitation to establish a "clear and convincing" evidence standard to prove the special defense of concealment or misrepresentation

in a claim for coverage under an insurance contract. *Rego* v. *Connecticut Ins. Placement Facility,* 219 Conn. 339, 344, 593 A.2d 491 (1991). We noted in *Rego* that the elevated standard of proof applied "solely to claims of common law fraud, the elements of which are distinct from an insurer's defense of concealment or misrepresentation." Id. We fail to see the logic in requiring a claimant to prove his claim by a higher standard of proof than preponderance of the evidence because of the potential for fraud, whether or not alleged, when an insurer alleging concealment or misrepresentation as a defense would not be subject to that same standard. Elevating the standard of proof in noncontact uninsured motorist cases would not only expand the standard for fraud to any situation in which there is the potential for fraud, but would be contrary to the public policy behind the uninsured motorist legislation.

We conclude that the burden of proving by a preponderance of the evidence that an accident occurred because of an unidentified vehicle provides sufficient assurance of the validity of the claimant's allegations. This standard adequately addresses the concern for fraud while at the same time maintaining the remedial purposes of our uninsured motorist statutes.

We conclude that the trial court improperly granted the plaintiff's motion to vacate the arbitration award because of the defendant's failure to provide independent corroborative evidence of an unidentified vehicle causing the accident. Having reviewed the record, we further conclude that without the need for corroborative evidence, there was a substantial basis in the evidence to confirm the arbitrators' award. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 660, 591 A.2d 101 (1991); *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991).

The judgment is reversed and the case is remanded with direction to render judgment confirming the arbitrators' award.

In this opinion the other justices concurred.

