[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
On August 27, 1991, the plaintiff, Edward Smith, was injured while rollerblading on Kingsbury Drive in Trumbull. He claimed that his injures were caused by a hit and run vehicle. The plaintiff was insured by the defendant, Government Employees Insurance Company (GEICO), and made a claim for uninsured motorist benefits. Pursuant to the automobile insurance policy, the parties submitted all disputed issues regarding coverage and damages to a three person arbitration panel. (Application To Vacate Arbitration Award, Complaint, and Demand For New Trial, Exhibit D, p. 28 [Application To Vacate]). A majority of the arbitrators found in favor of the plaintiff on the issue of liability. They also found that the plaintiff was entitled to gross damages in the amount of $650,000, and that the defendant was entitled to a collateral source credit of $53,246.04, for a net award to the plaintiff of $596,753.96.
The dissenting arbitrator argued that the plaintiff was not CT Page 8191 entitled to recover for his injuries because the plaintiff failed to "prove that the owner or operator of said hit and run vehicle was negligent." The dissenter also objected to the amount of damages awarded to the plaintiff, feeling that it was "excessive in the light of the evidence." (Application To Vacate, Exhibit B).
On April 30, 1997, the defendant filed an "Application To Vacate Arbitration Award, Complaint And Demand For New Trial" ("Application To Vacate") pursuant to General Statutes §52-418, on the ground that the award was improper because the arbitrators imperfectly executed their powers. The defendant argues that there was no evidence produced during the hearings to support the majority's finding that the plaintiff was injured by a negligently operated hit and run motor vehicle. The defendant claims that the more likely cause of the plaintiff's injuries is that he slipped while rollerblading.
In a pleading entitled "Claimant's Memorandum In Opposition To Application To Vacate Arbitration Award, Complaint and Demand For New Trial" (Memorandum In Opposition) dated May 12, 1997, the plaintiff argues that the arbitration was voluntary and the submission was unrestricted, and therefore, the court's review should be confined to determining whether the award conformed to the submission. In addition, the plaintiff argues that "[n]otwithstanding the fact that the review in this matter is limited to whether or not the award conforms to the submission, there is still substantial evidence to support the arbitrators' award," in that there was evidence of contact between the plaintiff and a hit and run vehicle, and evidence that the contact was brought on by the negligence of the hit and run vehicle's driver. (Memorandum In Opposition, p. 13). Finally, the plaintiff argues that the award conformed to the evidence submitted, and that the majority of arbitrators did not exceed or imperfectly execute their powers.
SCOPE OF REVIEW
The uninsured motorist policy at issue provides for binding arbitration and both parties agree that the submission to the arbitrators was unrestricted. See Geico's memorandum, p. 7; Plaintiff's memorandum in opposition, pp. 5-6. The Supreme Court has held that "where judicial review of compulsory arbitration proceedings required by § 38-175c(a)(1) [now § 38a-336] is undertaken under General Statutes § 52-418, the reviewing CT Page 8192 court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings." AmericanUniversal Ins. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171
(1987).
DISCUSSION
 I
Coverage
"[W]hether a [hit] and run accident occurred as the claimant asserts, despite the absence of corroborative evidence, is a pure question of fact to be determined by the trier." KeystoneInsurance Co. v. Raffile, 225 Conn. 223, 234-35, 622 A.2d 563
(1993). The claimant has the burden of proving by a preponderance of the evidence that an accident occurred because of an unidentified vehicle. Id., 237. "The claimant will satisfy his or her burden of proof if the evidence induces in the mind of the trier a reasonable belief that it is more probable than not that the accident occurred in the manner in which the claimant asserts." Id., 235. "The claimant's evidence need not negate all other possibilities or exclude every other reasonable conclusion." Id. "Admittedly, . . . the evidence might be scarce. There may be no eyewitness, the physical evidence at the accident scene may evince nothing more than the fact that an accident occurred, and an accident reconstructionist may only be able to give an expert opinion primarily based on the claimant's own account of the accident. The paucity of evidence, however, should not defeat the claimant's right to persuade the trier that his claim is valid." Id.
"If the extent of a claimant's evidence is his or her account of how the accident occurred, then the claimant's credibility will be tested and evaluated by the trier of fact as in any civil action." Keystone Ins. Co. v. Raffile, supra, 225 Conn. 235. "[A] claimant alleging that an accident was caused by an unidentified vehicle, even in the absence of physical contact, need not present independent evidence to corroborate how the accident occurred." Id., 236.
Based upon these standards, there is substantial evidence in the record to support the arbitrators' award. The record reveals CT Page 8193 the following facts.
On the day of the accident, August 27, 1991, the weather was clear, warm, and sunny. (Transcript, August 9, 1996, p. 26). The plaintiff, after arriving home from work sometime after 4:15 p.m., decided to exercise by rollerblading. (Transcript, August 9, 1996, p. 20). The plaintiff testified that he rollerbladed quite often, and that he followed a route from his parents' home on Kingsbury Drive to Applegate Lane as he had done many times that summer. (Transcript, August 9, 1996, pp. 20, 26; Transcript, August 25, 1996, p. 162). These roads were located in a suburban setting and were paved with regular black top. (Transcript, August 9, 1996, p. 28).
Nearing the end of his workout, the plaintiff began to rollerblade slowly up a hill on Kingsbury Drive towards his home at the speed of a fast walk. (Transcript, August 9, 1996, p. 21). During the ascent, he was leaning slightly forward. (Transcript, September 25, 1996, p. 183). At some point, the plaintiff heard the hum of tires and the acceleration of a motor behind him, he checked his distance from the curb of Kingsbury Drive, which he judged to be about four to five feet,[1] and he was then struck in the back of the neck. (Transcript, August 9, 1996, p. 21). Three polaroid photographs taken shortly after the accident were produced at the hearing, showing a bruised area on the back of the plaintiff's neck. (Claimant's Exhibit C-1, 2, 3).[2]
The plaintiff testified that at the time of impact, he did not hear skidding tires or the sound of a horn, there were no vehicles approaching him from the other direction on Kingsbury Drive, and there was room for a vehicle to pass the plaintiff from behind on the left. (Transcript, September 25, 1996, p. 167). He also testified that construction vehicles were using Kingsbury Drive often due to a new subdivision being built in the area. (Transcript, September 17, 1996, p. 27).
Attorney Leopold DeFusco was a motorist on Kingsbury Drive around 5:30 p.m. on the day of the plaintiff's accident. (Transcript, August 9, 1996, p. 6). Seeing the plaintiff badly wounded on the right side of the road, DeFusco approached him. (Transcript, pp. 6-7). At some point, DeFusco asked the plaintiff if he had been struck by an automobile, to which the plaintiff nodded in the affirmative. (Transcript, August 9, 1996, p. 8). Based upon the plaintiff's verbal response to another of Defusco's questions, DeFusco believed that the plaintiff had some CT Page 8194 understanding as to what was occurring around him. (Transcript, August 9, 1996, p. 8).
Trumbull EMT William Mayeran[3] testified that upon arriving at the accident scene and inquiring of the plaintiff what had happened, the plaintiff indicated that an automobile was involved. (Transcript, September 25, 1996, pp. 209, 215, 216, 219, 223, 232, 254, 258, 267). Mayeran testified further that a typical rollerblading injury is a broken wrist caused by the rollerblader falling forward, but that there was no indication the plaintiff had sustained such an injury. (Transcript, September 25, 1996, p. 229-230). According to Mayeran, the plaintiff's injury appeared to be inconsistent with rollerblading accidents, and was probably caused by an outside agency. (Transcript, September 25, 1996, p. 227). Mayeran testified that it was likely the plaintiff was struck from behind at about thigh level, with the head injury resulting from his head hitting the curb. (Transcript, September 25, 1996, p. 232). Mayeran testified that there was blood in the road away from the victim when the ambulance arrived. (Transcript September 25, 1996, p. 222).
Officer Joseph Velky of the Trumbull Police Department testified that he was called to the accident scene after the plaintiff had been removed by ambulance. (Transcript, January 21, 1997, pp. 578-79). Officer Velky saw a small pool of blood on the road; (Transcript, January 21, 1997, pp. 579, 604); in the area of a foot to a foot and a half from the curb. (Transcript, January 21, 1997, p. 613).[4] He testified that he did not see any skid or tire marks on the roadway. (Transcript, January 21, 1997, p. 581). Officer Velky further testified that while interviewing the plaintiff at the hospital, the plaintiff told him he was struck by an automobile. (Transcript, January 21, 1997, p. 583).
Michael Opalak, the plaintiff's neurosurgeon, in a report dated September 25, 1995, stated that based upon reasonable medical probability, the plaintiff's injury was consistent with being struck from behind by a motor vehicle or some object protruding from a motor vehicle. (Claimant's Exhibit A-9).[5]
These facts, taken as a whole, could lead a reasonable trier of fact to conclude that it was more probable than not that the plaintiff's injuries were caused by a hit and run motor vehicle. The plaintiff was not required to demonstrate that he came into contact with a hit and run driver. See Steitweiser v. MiddlesexCT Page 8195Mutual Assurance Co., 219 Conn. 371, 593 A.2d 498 (1991). In addition, the trier of fact could reasonably find that the hit and run driver failed to sound a horn or apply his or her brakes and infer from this finding that the motor vehicle was negligent at the time the plaintiff was struck in regard to the speed of the vehicle, keeping a proper look out, and keeping the vehicle under control.
 II
Damages
"Although damages often are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount." (Citation omitted.) 24 Leggett Street Limited Parts. v. Beacon Industries,239 Conn. 284, 309, 685 A.2d 305 (1996). "Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate . . . ." (Internal quotation marks omitted.) Id.
There are five categories of damages asserted by the plaintiff. The first is comprised of medical bills, which amount to $58,262.59. (Claimant's Exhibit A-13). These damages are properly awarded to plaintiff. The second is comprised of lost wages, in the amount of $14,560.00. This figure was computed by multiplying the plaintiff's weekly wage at Eaton Consolidated Controls of $280.00 by time lost from work, which equaled fifty-two weeks. (Claimant's Exhibit A-14). These damages are also properly awarded.
The third category includes the plaintiff's lost earning capacity. The record shows that the plaintiff suffered a 10 percent permanent partial impairment of his right shoulder and that the plaintiff's disabilities suffered as a result of the accident have "lead to a modest reduction in wages when able to find employment and a significant loss in vocational accessibility." (Claimant's Exhibit F, p. 20). There is also a loss in work life participation, as the plaintiff now has difficulty performing certain physical tasks. The plaintiff provided evidence of the monetary damages resulting from his loss of earning capacity through the report of Gary M. Crakes, Ph.D., CT Page 8196 an economic consultant. (Claimant's Exhibit F). Dr. Crake's report takes into consideration the plaintiff's unimpaired earning capacity compared to his post-injury earning capacity, with adjustments made to reflect general earning trends over an average lifetime, and discounts for items such as federal and Connecticut income taxes. On the basis of Crake's report, plaintiff seeks a recovery of $495,000 for loss of future earning capacity. The defendant submitted testimony from Jeffrey Blank, Ph.D., a rehabilitation and vocational consultant. Dr. Blank testified that Dr. Crakes used inappropriate figures because Dr. Crake used numbers that were "representative of average wages over a lifetime and not representative of entry level wages." Dr. Blank's opinion was that the use of such numbers caused an artificial inflation of the total amount of lost wages. (Transcript, February 17, 1997, p. 776). Furthermore, Dr. Blank did not feel the plaintiff's post injury physical limitations affected his earning capacity. (Transcript, February 17, 1997, p. 793). On balance, the court credits Dr. Crake's report over the testimony of Dr. Blank and concludes that the plaintiff's evidence provides a reasonable basis for the calculation of lost future earning capacity in the amount of $495,000.
The fourth category is future medical expenses, which the plaintiff estimates to be $15,000. This figure is supported by the report of Eric Katz, an orthopedic surgeon who treated the plaintiff for his shoulder injury. Dr. Katz determined that the plaintiff suffered a 10 percent permanent partial impairment of the right shoulder as a result of the accident, and he recommended an MRI and future arthroscopic surgery if the plaintiff's shoulder pain continued, which would cost approximately $15,000. (Claimant's Exhibit A-11).
The fifth and final category is comprised of future rehabilitation, which the court also finds to be reasonably supported by the evidence. In a report prepared by Richard Schuster, Ph.D., a psychologist and neuropsychologist, it was determined that the plaintiff, up to four years after the accident, was experiencing residual problems; (Claimant's Exhibit F, pp. 10-11); some of which the plaintiff testified about such as loss of memory, loss of confidence, and lethargy. (Transcript, November 5, 1996, pp. 347-352). To help the plaintiff resolve these continuing problems, the medical determination was that the plaintiff would benefit from continued counseling, for most of his life. This counseling was estimated as involving 262 sessions at $120 per session for a total monetary amount of $31,440. CT Page 8197 (Claimant's Exhibit F; Memorandum of Factual Evidence Before the Arbitrators, p. 56).
CONCLUSION
The plaintiff has presented sufficient facts to prove he was covered under the insurance policy issued by the defendant. Further, the plaintiff has proven sufficient facts to prove that he is entitled to each of the damages prayed for, totalling $596,753.96 when off-set by a collateral source credit of $53,246.04.
Dated this 8th day of August, 1997.
STEVENS, JUDGE