## ROXANNE M. POLIZOS *v.* NATIONWIDE MUTUAL INSURANCE COMPANY
## (SC 16214)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 5, 2000—officially released April 3, 2001

*A. Jeffrey Somers*, for the appellant (defendant).

*George J. Markley*, with whom, on the brief, was *Raymond B. Rubens*, for the appellee (plaintiff).

*Opinion*

KATZ, J. This case requires us to determine when the statute of limitations under General Statutes § 52-576 (a)[1] begins to run on a claim for uninsured motorist benefits. We conclude that the statute of limitations does not begin to run until the plaintiff knew or should have known that the tortfeasor was uninsured. Accord-

---

[1] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

ingly, we affirm the judgment of the Appellate Court, which had affirmed the trial court's order compelling the parties to proceed with arbitration of the plaintiff's claim for uninsured benefits. *Polizos* v. *Nationwide Mutual Ins. Co.*, 54 Conn. App. 724, 732, 737 A.2d 946 (1999).

The record discloses the following facts as set out by the Appellate Court. "On April 16, 1988, the plaintiff [Roxanne M. Polizos] was an insured under an automobile liability policy issued by the defendant [Nationwide Mutual Insurance Company] when she was involved in an automobile accident with [a vehicle operated by] Marc Mead. Mead was driving a car leased to him by Sharp Leasing Corporation (Sharp Leasing). On April 25, 1988, the plaintiff applied to the defendant for medical benefits. Subsequently, on March 12, 1989, the plaintiff filed an action against Mead and Sharp Leasing. On May 10, 1989, Progressive Insurance wrote a letter to the plaintiff's counsel on behalf of Sharp Leasing.[2] Also, an attorney appeared for Sharp Leasing on May 25, 1989.

"On June 17, 1994, the plaintiff filed interrogatories, which Sharp Leasing answered on July 15, 1994. The answers indicated a lack of insurance coverage. The case was then tried to a jury and a plaintiff's verdict in

[2] "The letter from Progressive Insurance to the plaintiff [provided] in part: '[W]e [Progressive Insurance] are an excess liability insurance carrier for [Sharp Leasing]. Under the terms of our policy, we provide coverage to Sharp Leasing when, because of their status as owner of a leased vehicle, they become financially responsible for damages suffered by a third party. In addition, under certain circumstances, the policy provides the lessee with the statutory minimum financial responsibility limits of the state in which the loss occurred. Our policy only becomes effective when there is no other insurance available on the leased vehicle. We are currently investigating the applicability of our coverage to this matter. You will be notified as soon as a final determination is made.' " *Polizos* v. *Nationwide Mutual Ins. Co.*, supra, 54 Conn. App. 725–26 n.1.

the amount of $202,000 was rendered on May 10, 1996.[3] The plaintiff was unable to collect the award. On June 19, 1996, counsel for Sharp Leasing wrote to the plaintiff's attorney stating that Sharp Leasing was not insured, and that to the best of his knowledge, Mead was also not insured.

"On July 17, 1996, [the] plaintiff's counsel made a demand to the defendant for payment under the uninsured motorist coverage provisions of her policy.[4] The defendant denied the claim and invoked the statute of limitations for written contracts . . . § 52-576 (a). Subsequently, the plaintiff filed an application in the Superior Court to compel arbitration, which was granted by a memorandum of decision on February 9, 1998." Id., 725–26.

"The defendant objected to the plaintiff's application to compel arbitration of her uninsured motorist claim on the ground that the plaintiff's claim was barred by the six year statute of limitations set forth in § 52-576 (a). The defendant argued that the statute of limitations began to run on the date of the plaintiff's automobile accident. The plaintiff, however, argued that the uninsured coverage claim accrued when the verdict against Sharp Leasing was secured.

"The trial court rejected both of those claims and concluded that the time period began to run from the date when the plaintiff received answers to her interrogatories that suggested that Sharp Leasing might not

[3] The jury verdict in favor of the plaintiff was returned against Sharp Leasing. Mead never appeared in this case and a default subsequently was entered against him. Subsequent references herein to the "tortfeasor" are to Sharp Leasing.

[4] "The plaintiff's automobile liability insurance policy contained a written agreement to arbitrate. The defendant conceded that the letter demanding payment of the plaintiff's uninsured motorist coverage was sufficient, substantively, to demand that it arbitrate the plaintiff's uninsured motorist claim." Polizos v. Nationwide Mutual Ins. Co., supra, 54 Conn. App. 726 n.2.

have insurance that was sufficient to cover the accident. The trial court reasoned that the particular facts unique to this case put forth an equitably obvious moment when [the] plaintiff must be held to have been alerted that action ought to be taken to request arbitration or issue notice of the likely need therefor. That point in time occurred when the plaintiff received the interrogatory answer indicating a complete absence of coverage; it was then that [an uninsured motorist] action could successfully be maintained." (Internal quotation marks omitted.) Id., 727.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly concluded that the plaintiff's application to compel arbitration was not barred by the six year limitation period contained in § 52-576 (a).[5] Specifically, the defendant contended that the plaintiff's demand for payment, made on July 17, 1996, was untimely because the statute of limitations ran from the date of the accident, April 16, 1988. Id., 726–27. Concluding that the cause of action for uninsured benefits under the insurance policy accrued on July 15, 1994, the date the plaintiff knew or should have known of the lack of insurance coverage, the Appellate Court determined that her claim was timely under § 52-576 (a). Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 732.

Thereafter, the defendant filed a petition for certification to appeal to this court, which we granted, limited to the following issue: "Did the Appellate Court properly conclude that the contract statute of limitations on the plaintiff's action for uninsured motorist benefits began

---

[5] The defendant also maintained that the trial court improperly had granted the plaintiff's application to compel arbitration because her claim was not within the two year statute of limitations set forth in her insurance policy with the defendant. The Appellate Court did not reach the merits of this claim because the defendant had failed to raise the issue in the trial court. *Polizos* v. *Nationwide Mutual Ins. Co.*, supra, 54 Conn. App. 731.

to run on the date that the plaintiff became aware that the tortfeasor was uninsured?"[6] *Polizos* v. *Nationwide Mutual Ins. Co.*, 251 Conn. 916, 740 A.2d 865 (1999). We answer this question in the affirmative and, accordingly, we affirm the judgment of the Appellate Court.

The defendant advances a "bright line" approach, arguing that because the tortfeasor was uninsured at the time of the April 16, 1988 accident, the cause of action accrued, and the statute of limitations began to run, as of that date.[7] As a result, the defendant maintains that the plaintiff's demand for payment and subsequent application to compel arbitration was time barred.

The plaintiff contends that the "linchpin of accrual is not when a claim can be initiated, but, rather, when a claim can be enforced." *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999). In the context of the present case, she maintains in her brief that "enforcement of one's rights is impossible until one knows that there are rights to be enforced." Accordingly, the plaintiff argues that, because the accrual of a cause of action for uninsured motorist benefits is linked to the knowledge that the tortfeasor is uninsured,

[6] As the plaintiff properly noted in her brief, because she might have had the opportunity to realize the lack of coverage in July, 1994, when Sharp Leasing's interrogatory answers were served, the issue in this appeal is more appropriately stated as follows: Did the Appellate Court properly conclude that the contract statute of limitations on the plaintiff's action for uninsured motorist benefits began to run on the date that the plaintiff knew *or should have known* that the tortfeasor was uninsured?

[7] The defendant conceded, however, that this "bright line" is, in reality, not so bright. The defendant recognized in its brief that in cases in which the tortfeasor is insured on the date of the accident, but thereafter, becomes uninsured, the statute of limitations would begin to run on the date the tortfeasor becomes uninsured. In addition, the defendant acknowledged at oral argument in this court that there may be circumstances in which it would be unfair to a plaintiff to use the date of the accident as the accrual date, such as a situation in which the tortfeasor's insurance company provides information to the plaintiff that is short of being fraudulent, but nevertheless, is misleading.

"the mere occurrence of an accident does not, in and of itself, give rise to an uninsured motorist claim." Therefore, the plaintiff contends that the statute of limitations under § 52-576 (a), as applied to her claim for uninsured benefits, began to run when she first knew or should have known that the tortfeasor was uninsured. The plaintiff submits that the earliest date on which she should have known that the tortfeasor was uninsured was, as determined by the trial court, and affirmed by the Appellate Court, the date on which the plaintiff received answers to her interrogatories, thereby putting her on notice that there was no insurance coverage for the accident.

The dispute between the parties in the present case raises an issue of statutory construction. "Statutory construction . . . presents a question of law over which our review is plenary. . . .   According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . .   In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .   *Smith* v. *Smith*, 249 Conn. 265, 272–73, 752 A.2d 1023 (1999)." (Internal quotation marks omitted.) *Coelho* v. *ITT Hartford*, supra, 251 Conn. 110.

The subject matter involved in the present case is uninsured motorist insurance, the purpose of which "is to place the insured in the *same* position as . . . the insured would have been had the [uninsured] tortfeasor been fully insured." (Emphasis in original; internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997). "It is well established that the public policy derived from the unin-

sured motorist legislation is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Insurance companies are powerless to restrict the broad coverage mandated by the statute. . . . The public policy embodied in our uninsured motorist legislation favors indemnification of accident victims unless they are responsible for the accident. . . . Therefore, any limitation on the ability of an individual injured by an uninsured motorist to recover benefits for his injuries will have to bear close scrutiny." (Citations omitted; internal quotation marks omitted.) *Keystone Ins. Co.* v. *Raffile,* 225 Conn. 223, 232–33, 622 A.2d 564 (1993).

Against this background, we turn to General Statutes § 52-576 (a), which provides in relevant part that, "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." The question we must answer in the present case, then, is when the right of action for uninsured motorist benefits accrued under the plaintiff's contract with the defendant. "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." (Internal quotation marks omitted.) *Coelho* v. *ITT Hartford,* supra, 251 Conn. 111; *D'Occhio* v. *Real Estate Commission,* 189 Conn. 162, 182, 455 A.2d 833 (1983); *Eising* v. *Andrews,* 66 Conn. 58, 64, 33 A. 585 (1895); cf. *Vaughn* v. *State Farm Mutual Automobile Ins. Co.,* 445 So. 2d 224, 226 (Miss. 1984) ("[A] cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. . . . [A] cause of action must be complete before it can be said to have 'accrued.' " [Internal quotation marks omitted.]). "While the statute of limitations normally begins to run immediately upon the

accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Coelho* v. *ITT Hartford*, supra, 111; *Engelman* v. *Connecticut General Life Ins. Co.*, 240 Conn. 287, 294 n.7, 690 A.2d 882 (1997).

In considering this issue, admittedly one of first impression in our state, we recognize that "there has been almost no discussion of this matter in either the appellate cases [of other states] or the secondary literature." 1 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. Rev. 1999) § 7.12, p. 377. We conclude, however, that, reading § 52-576 (a) in conjunction with other relevant case law, an action for uninsured motorist benefits does not accrue, and thus, the statute of limitations does not begin to run, until the plaintiff knew or should have known that the tortfeasor was uninsured.

In *Coelho* v. *ITT Hartford*, supra, 251 Conn. 106, we addressed a similar situation. The plaintiffs therein had been injured as the result of a motor vehicle accident. Id., 107. After exhausting the limits of liability under the tortfeasor's policy, the plaintiffs submitted an application for an order to proceed with arbitration in compliance with the underinsured motorist provision of their contract with the defendant. Id., 108. The defendant objected, claiming that the cause of action for underinsured motorist benefits had accrued on the date of the accident, and thus, the pertinent statute of limitations, § 52-576 (a), had been triggered as of that date. Id. On that theory, the defendant maintained, the plaintiffs' application, submitted more than six years thereafter, was time barred.[8] Id.

---

[8] Specifically, the defendant in *Coelho* argued that "[b]ecause the plaintiffs' claim *could have been initiated* immediately after the . . . accident, the pertinent statute of limitations, § 52-576 (a), began to run as of that date."

In *Coelho*, we determined that, "a cause of action for underinsured motorist benefits provides a remedy, not for an injury sustained as the result of a motor vehicle accident, but, rather, for the denial of coverage under a tortfeasor's insurance policy." Id., 112, citing General Statutes § 38a-336 (b).[9] Thus, we rejected the defendant's contention that the date of the accident was the trigger date for accrual under an underinsured motorist policy. Id., 112–14. We determined that "because the statute of limitations under § 52-576 is based on the accrual of a cause of action for underinsured motorist benefits, and accrual is dependent upon enforcement, the time for commencing such an action begins to run on the date of exhaustion of the tortfeasor's liability limits." Id., 112. Accordingly, we concluded that the plaintiffs' application for arbitration was timely because it was submitted within six years from the date of exhaustion. Id., 117.

In the present case, the defendant maintains in its brief that, because the plaintiff "*could, theoretically,*" successfully have maintained an action against the tortfeasor on the date of the accident, her cause of action

---

(Emphasis added.) *Coelho* v. *ITT Hartford*, supra, 251 Conn. 109. Essentially, the defendant maintained that "a cause of action for underinsured benefits accrues from the date that an action may be brought." Id.

[9] General Statutes § 38a-336 (b) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. In no event shall there be any reduction of uninsured or underinsured motorist coverage limits or benefits payable for amounts received by the insured for Social Security disability benefits paid or payable pursuant to the Social Security Act, 42 USC Section 301, et seq. The limitation on the total amount of recovery from all policies shall not apply to underinsured motorist conversion coverage purchased pursuant to section 38a-336a."

for uninsured motorist benefits accrued, and thus, the statute of limitations began to run, as of that date. (Emphasis added.) This was the argument, in essence, that we rejected in *Coelho*. As we noted therein, "the concept of accrual under a particular statute differs from the right to initiate recovery proceedings under a particular policy provision." *Coelho* v. *ITT Hartford*, supra, 251 Conn. 113–14. Indeed, in the present case, although the plaintiff, *theoretically* could have initiated an action against the tortfeasor on the date of the accident, using the date of the accident as the accrual date for her uninsured motorist action would require the plaintiff to have made a claim against the defendant "before she ha[d] any awareness of a coverage problem," or essentially, before she knew of her right to bring an action against the defendant. *Polizos* v. *Nationwide Mutual Ins. Co.*, supra, 54 Conn. App. 730–31. Therefore, simply because the plaintiff *could have* initiated a claim against the tortfeasor on the date of the accident does not necessarily mean that her claim for uninsured motorist benefits accrued on that date.

It is well established that the absence of insurance under the tortfeasor's policy is an essential element, and indeed, a necessary precondition, to the recovery of uninsured motorist benefits. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 195, 530 A.2d 171 (1987); see also *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 367–68, 641 A.2d 783 (1994) (noting that in order to recover under underinsured motorist policy, insured must prove amount of damages and that other motorist was underinsured and legally liable). That prerequisite to recovery confirms that a cause of action for uninsured benefits, like a cause of action for underinsured benefits, provides a remedy for the denial of coverage under a tortfeasor's policy, not for an injury sustained as a result of a motor vehicle accident. *Coelho* v. *ITT Hartford*, supra, 251

Conn. 112; see also *Haynes* v. *Yale-New Haven Hospital,* supra, 243 Conn. 24 (noting that action for benefits under uninsured motorist coverage endorsement is, generally speaking, action to enforce contract); *Bayusik* v. *Nationwide Mutual Ins. Co.,* 233 Conn. 474, 479, 659 A.2d 1188 (1995) (employing without comment contract statute of limitations, rather than statute of limitations applicable to tort actions); *Wynn* v. *Metropolitan Property & Casualty Co.,* 30 Conn. App. 803, 807, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994) (same). Accordingly, because an award of uninsured benefits cannot be enforced until it is determined that the tortfeasor is uninsured, such a claim does not accrue until the plaintiff is aware or should have been aware of that fact.[10] Cf. *Mapes* v. *Auto Club Ins. Assn.,* 208 Mich. App. 5, 7, 527 N.W.2d 22 (1994) (concluding that plaintiff did not have legally enforceable uninsured motorist claim until tortfeasor's insurer became insolvent); *Vaughn* v. *State Farm Mutual Automobile Ins. Co.,* supra, 445 So. 2d 226 (concluding that where issue of uninsured status of driver was disputed, cause of action for uninsured motorist benefits did not accrue until final determination made that driver was not insured); *Allstate Ins. Co.* v. *Giordano,* 108 App. Div. 2d 910, 912, 485 N.Y.S.2d 797 (1985) (concluding that vehicle did not "become uninsured" for purposes of instituting arbitration proceeding against claimants'

---

[10] In the present case, an overview of the record confirms the finding by the trial court that the plaintiff had no knowledge of the uninsured status of the tortfeasor until well after the date of the accident, specifically, when she received Sharp Leasing's answers to her interrogatories on July 15, 1994, indicating a lack of coverage. The trial court determined that, prior to July 15, 1994, the plaintiff's belief that there was coverage was justified based upon the letter that she had received from Progressive Insurance discussing such coverage. Moreover, we note that although the letter from Progressive Insurance indicated that the plaintiff would be informed as soon as a final determination concerning its coverage was made; see footnote 2 of this opinion; no such determination was ever communicated until after the jury verdict, seven years later.

own insurer until court determined vehicle stolen and owner's insurer not liable); *Kraly* v. *Vannewkirk*, 69 Ohio St. 3d 627, 633–35, 635 N.E.2d 323 (1994) (concluding that statute of limitations for uninsured motorist claim did not begin to run until tortfeasor's insurer became insolvent); *Seay* v. *Prudential Property & Casualty Ins. Co.*, 375 Pa. Super. 37, 42, 543 A.2d 1166 (1988) (concluding that plaintiff knew or should have known on date of accident that tortfeasors' vehicles "were unidentified and therefore presumptively uninsured").

The defendant contends that a determination that a cause of action for uninsured motorist benefits accrues when the plaintiff first learns that the tortfeasor is uninsured, will place "the control of when the statute of limitations begins to run unilaterally in the hands of the plaintiff." The defendant maintains that, under that standard, a plaintiff "could, hypothetically, postpone any inquiry about the insured status of [a] defendant until many years after the accident, and then wait six more years to present a claim to his or her insurer." Additionally, the defendant urges the date of the accident as the accrual date because it will ensure "consistent application of the statute of limitations . . . ." We are not persuaded that those concerns should determine the resolution of this issue.

Taking the arguments in order, we first note that, in uninsured motorist actions, intentional manipulation of the court system or delay in bringing suit is simply not an issue. Indeed, the defendant has failed to provide any explanation as to why an individual who has been injured in an automobile accident would intentionally delay inquiring about the uninsured status of the tortfeasor in order to postpone bringing an action to recover for his or her injuries. Additionally, by deciding that a plaintiff's cause of action accrues, and the statute of limitations begins to run, when she knows of the unin-

sured status of the tortfeasor or *reasonably should have known*, the trial court in the present case injected some objectivity into the analysis See, e.g., *Seay* v. *Prudential Property & Casualty Ins. Co.*, supra, 375 Pa. Super. 42 (applying "knows" or "should have known" objective discovery standard). Thus, a plaintiff in an uninsured motorist case could not, as the defendant contends, "postpone any inquiry about the insured status of the [tortfeasor] until many years after an accident, and then wait six more years to present a claim to his or her insurer."

Our real concern in uninsured motorist actions is the plaintiff's access to, or more importantly, the insurance company's control over the information regarding the uninsured status of the tortfeasor. Although in most circumstances, a plaintiff will become aware of the tortfeasor's uninsured status at the time of the accident, or shortly thereafter, in certain cases, such as the present one, it may, through no fault of the plaintiff, take some time to discover that information. Indeed, the insurance company is the party who holds all of the information. Therefore, the defendant's concern about manipulation by the plaintiff is unwarranted, and its suggestion to use the date of the accident to trigger the statute of limitations unjustifiably threatens to penalize the plaintiff for her lack of information when that information was not within her control.

A leading treatise on uninsured motorist insurance also recognizes the problem presented in this case, that is, "when the discovery of the tortfeasor's status occurs after a substantial period of time had [passed] following the occurrence of the accident." 1 A. Widiss, supra, § 7.12, p. 383. In these types of cases, the treatise notes, "the injured person should not be penalized," by the court's use of the date of the accident as the accrual date. Id., § 7.13, p. 386. Rather, the case "should be

decided on the basis of whether the claimant has vigilantly pursued the claim." Id.

The defendant also warns that using the date of the accident will ensure "consistent application of the statute of limitations . . . ." We recognize the superficial appeal of that argument, but nevertheless, we are not persuaded that this concern should influence our determination of this issue. As the defendant recognized, both in its brief and at oral argument, there may be instances in which using the date of the accident as the accrual date would be unfair to the plaintiff. See footnote 7 of this opinion. As Professor Widiss again points out, there could be certain circumstances in which a plaintiff will not be aware of the status of the tortfeasor at the time of the accident, including those involving an insured tortfeasor whose insurance company later becomes insolvent, or an insured tortfeasor whose insurer denies liability. 1 A. Widiss, supra, § 7.13, p. 386. Thus, this seemingly "consistent application" of the statute of limitations, is, in actuality, not so consistent.

Finally, as we noted in *Coelho*, an insurance carrier, pursuant to No. 93-77 of the 1993 Public Acts, now codified at § 38a-336 (g),[11] may contract out of the six

---

[11] General Statutes § 38a-336 (g) provides: "(1) No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim may be made on the uninsured or underinsured motorist provisions of an automobile liability insurance policy to a period of less than three years from the date of accident, provided, in the case of an underinsured motorist claim the insured may toll any applicable limitation period (A) by notifying such insurer prior to the expiration of the applicable limitation period, in writing, of any claim which the insured may have for underinsured motorist benefits and (B) by commencing suit or demanding arbitration under the terms of the policy not more than one hundred eighty days from the date of exhaustion of the limits of liability under all automobile bodily injury liability bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals.

"(2) Notwithstanding the provisions of subdivision (1) of this subsection, in the case of an uninsured motorist claim, if the motor vehicle of a tortfeasor is an uninsured motor vehicle because the automobile liability insurance

year statutory limitations period by requiring written notice of an impending claim within a shorter period, one that the insurer itself establishes. *Coelho* v. *ITT Hartford*, supra, 251 Conn. 117. Thus, "[i]t is the insurer's prerogative . . . to guard against the assertion of stale claims that could potentially arise as a consequence of our reading of § 52-576." Id.

We conclude that because the statute of limitations under § 52-576 (a) is based on the accrual of a cause of action, and accrual of a cause of action for uninsured motorist benefits is dependent upon a plaintiff's ability to enforce the uninsured motorist contract, the time for commencing such an action begins to run when the plaintiff knew or should have known that the tortfeasor was uninsured. In the present action, the plaintiff successfully could have maintained an action against the defendant as of the date that she was notified of the tortfeasor's lack of insurance coverage, July 15, 1994. That was when the plaintiff knew or should have known that she had a right to bring an action against the defendant for uninsured motorist benefits. Accordingly, the plaintiff's application for arbitration was timely.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

company of such tortfeasor becomes insolvent or denies coverage, no insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim may be made on the uninsured motorist provisions of an automobile liability insurance policy to a period of less than one year from the date of receipt by the insured of written notice of such insolvency of, or denial of coverage by, such automobile liability insurance company."