ALLAN ANDERSON *v.* CITY OF BRIDGEPORT

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 14—decided December 17, 1947

*Samuel Reich* and *George A. Saden,* for the appellant (plaintiff).

*Harry Schwartz,* with whom, on the brief, was *John V. Donnelly,* for the appellee (defendant).

MALTBIE, C. J. The plaintiff brought this action, in which 174 others joined to assert similar rights, to recover certain amounts of salary which he claimed to be due to him as a police officer under the charter and ordinances of the defendant city but which were not paid when due. The period during which the salary was withheld was from April 1, 1932, to March 31, 1938.[1] The complaint is dated April 11, 1944. The defendant filed an answer containing several defenses, of which the first was that the plaintiff's right of action did not accrue within six years next before the commencement of the action, a plea which was based upon § 6005 of the General Statutes. To this defense the plaintiff demurred, the trial court overruled the demurrer and, on the plaintiff's failure to plead further, judgment was entered for the defendant. From that judgment

[1] The failure to pay in full the salary of the plaintiff is stated in the defendant's answer to have resulted from agreements made by him and other employees of the city in which he voluntarily waived certain percentages of his salary to aid the city in meeting financial difficulties caused by the economic depression from which the whole country was suffering during the years in question.

the plaintiff has appealed. The question is whether § 6005 applies to an action by a municipal officer to recover portions of his salary which have been withheld.

We are not primarily concerned here with the fact that the plaintiff as a police officer holds a public office; *Farrell* v. *Bridgeport,* 45 Conn. 191, 195; *McDonald* v. *New Haven,* 94 Conn. 403, 411, 109 A. 176; or the further fact that as such he stood in no contractual relationship to the city, and his right to receive the salary fixed under its charter and ordinances was not contractual in its nature. *Sibley* v. *State,* 89 Conn. 682, 685, 96 A. 161. The answer to the issue before us depends upon the construction to be given § 6005. The nature of that issue is well illustrated by certain cases wherein we have held the statute not applicable. Thus, in *Barber* v. *International Co.,* 74 Conn. 652, 656, 51 A. 857, we held that, although a judgment is a contract of record, and although in one sense it is a contract by specialty and in another it raises an implied contract, yet an action based upon it was not within the statute because the underlying reasons leading to the enactment of the statute had little if any application. In *Cromwell* v. *Savage,* 85 Conn. 376, 82 A. 972, we held that, although the statutes provide that a tax shall be a debt, yet the limitation was not applicable because the nature of a tax is so essentially different from a debt in the ordinary sense of the word; and in *Bridgeport* v. *Schwarz Bros. Co.,* 131 Conn. 50, 37 A. 2d 693, we reached a similar conclusion as to an assessment of benefits for a public improvement. Now we must determine whether the particular claim made by the plaintiff is or is not within the intent of the statute. In so doing, we must seek the true meaning of the specific language it contains and we

may not extend it to include situations merely because we think they are analogous to those designated in it. *Hatch* v. *Spofford,* 24 Conn. 432, 439.

Except for a limitation applying to actions upon promissory notes contained in chapter 14 of the Public Acts of the May session of 1812, § 6005 had its origin in the Revision of 1821, p. 310, § 3. It then read as follows: "No action of account, of debt on book, or on simple contract, or of assumpsit, founded upon implied contracts, or upon any contract in writing, not under seal, except promissory notes not negotiable, shall be brought but within six years next after the right of action shall accrue." The statute was, no doubt, largely founded upon an English law enacted in 1623, 21 Jac. I, c. 16. The only changes made in our statute since 1821 were in the Revisions of 1875 and 1888. In the former, it was made to read (p. 494, § 4): "No action of account, book debt, debt on simple contract, or assumpsit founded upon implied contract, or upon any contract in writing, not under seal, except promissory notes not negotiable," shall be brought except within six years. In the 1888 Revision, § 1371, it was changed into its present form, making it applicable to actions "for an account, or for a debt due by book to balance book accounts, or on any simple or implied contract, or upon any contract in writing not under seal, except promissory notes not negotiable."

In the early common law, no cause of action had a standing in court unless it fell within an established pattern; and while as time went on this practice was greatly liberalized Chitty, writing in 1825, said: "When the prescribed form of action is to be found in the Register, the proceeding should not materially vary from it, unless in those cases where another form of action has long been sanctioned by

usage; and the courts will not permit parties even by agreement to depart from the appropriate remedy; for it has been considered to be of the greatest importance to observe the boundaries of the different actions." 1 Chitty, Pleading (4th Am. Ed.) p. 89. Each of the established forms of action had its name, and the elements necessary to bring a case within it were fixed and certain.

Swift was one of the three men who prepared the Revision of 1821, and his digest was first published in 1822. There is no better source of light as regards the intent of provisions first appearing in that revision. So we turn to him as the first source of authority in determining the meaning of the words "debt . . . on simple contract," and "assumpsit, founded upon implied contract." A "simple contract" is a parol contract or a contract in writing not under seal or of record; 3 Bouvier, Law Dictionary (Rawle's 3d Ed.) p. 3074; and as the statute specifically includes contracts in writing not under seal the words "simple contract" as used in it are evidently intended primarily to mean oral contracts. An action of debt lay at common law where there was due a sum certain or capable of reduction to certainty. Swift said: "It will generally lie in all cases where there is a money demand: it will lie upon legal liabilities, on contracts express or implied, on contracts under seal, on records, and on statutes"; he says also that the action of debt "lies to recover money due by specialty," and further: "If a statute creates a right or offence, and prescribes no remedy or action, the common law will supply the form of bringing the action. If no form is prescribed by the statute, debt is the proper form." 1 Swift's Digest, pp. 572, 573, 585. Assumpsit would lie wherever debt would but also might be brought to recover unliquidated dam-

ages. 1 id., p. 574. Chitty wrote that assumpsit is "not sustainable unless there have been an express contract or unless the law will imply a contract" and that the action lay for money accruing under a statute; 1 Chitty, op. cit., pp. 92, 102; and in *Goshen* v. *Stonington,* 4 Conn. 209, 218, decided in 1822, it was held that assumpsit lay by one town against another to recover the expense of the support of a pauper, and the court pointed out that no express promise was necessary because the statutes compelled the payment. See Statutes, Rev. 1821, p. 370. The basis for an action of assumpsit to recover money due under a statute was necessarily the promise implied by law that it would be paid.

There can be no doubt that in 1821 the proper form of action to recover a salary fixed by statute or ordinance would be assumpsit upon an implied contract. In *Hickey* v. *Slattery,* 103 Conn. 716, 719, 131 A. 558, we pointed out that our ancient statutes of limitation were originally designed to apply to the various actions known to the common law, and the adoption of the Practice Act of 1879 abolishing set forms for instituting actions did not alter their scope. See *Baker* v. *Lee,* 52 Conn. 145, 146. In that statement we used the word "actions" not with reference to mere forms but to denote the congeries of elements which constituted causes of action within the established requirements of the common law. We see no reason now to question our decision in *Robbins* v. *Harvey,* 5 Conn. 335, 342; in that action an attorney brought an action of indebitatus assumpsit to recover fees; the bills for them were incurred in 1811; at that time there was a statute limiting the time for bringing an action of book debt under which, had the action been brought in that form, the plaintiff's claim would have been barred,

but there was no statute applicable to an action of assumpsit; the plaintiff's claim included the elements typically constituting a cause of action for book debt; and we held that he could not avoid the application of the limitation of actions of that nature by seeking recovery in assumpsit. When the phraseology of the statute, now § 6005, was changed by the revisers in 1875 and 1888, it is to be presumed that they did not intend to alter its meaning. *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 393, 400, 161 A. 852. The changes made in the statute in 1875 were inconsequential, and the words "assumpsit founded upon implied contract" were retained. The substitution in the Revision of 1888 of the words "on any simple or implied contract" for the words, in the 1821 law, "debt . . . on simple contract, or of assumpsit, founded upon implied contract," was evidently designed to omit the reference to "assumpsit," a form of action made obsolete by the Practice Act, and to make the consolidation of language that change naturally suggested. An action on an "implied contract" still includes actions which at common law would have taken the form of assumpsit upon such a contract. It necessarily follows that the cause of action stated in the complaint falls within the fair meaning of the statute.

Nor are there any such distinguishing elements as led us to hold that actions on judgments or to recover taxes or assessments are not within the intent of the statute. An action by a public officer, as regards the remedy for its enforcement, stands on a par with one to recover damages for the nonpayment of any debt. It may be that, as the plaintiff claims, there is not much danger of the loss of evidence which would be necessary to support his demand. But one great object of statutes of limita-

tion is "to prevent the unexpected enforcement of stale claims, concerning which persons interested have been thrown off their guard by want of prosecution." *Miller* v. *Calument Lumber & Mfg. Co.,* 121 Ill. App. 56, 66. According to a more specific statement filed by the plaintiff, the total amount of all salaries claimed by those who have joined in the action to have been withheld is about $370,000. If they can now, after the lapse of so many years since the last time salaries were not paid in full, successfully assert their claims, the unfortunate results upon the financial situation of the defendant city are obvious. There could rarely be an instance where the statement quoted above would so clearly apply.

The plaintiff cites certain cases as supporting his contention that statutes limiting actions on contract do not apply to the claims before us: *Warren County* v. *Harden,* 95 N. J. L. 122, 125, 112 A. 196, in which several earlier decisions of that court are cited; *Smyth* v. *New Providence,* 263 F. 481, 488, which was a case arising in New Jersey; and *Indianapolis* v. *Jobes,* 57 Ind. App. 515, 517, 107 N. E. 479. In *Santa Cruz County* v. *McKnight,* 20 Ariz. 103, 111, 177 P. 256, a statute limiting actions to recover liabilities created by statute was held applicable, and, supporting that conclusion, several California cases and a Kansas case are cited; but in all three states there were separate provisions applying to actions on implied contracts and on liabilities created by statute. See Ariz. Code (1939) §§ 29.201, 29.203; Cal. Code Civ. Proc. (Deering, 1941) §§ 338, 339; Kan. Gen. Stat. (Corrick, 1935) § 60.306. As we pointed out in *Hitchcock* v. *Union & New Haven Trust Co.,* 134 Conn. 246, 257, 56 A. 2d 655, we have no specific limitation as to actions to recover liabilities created by statute other than one applicable

to suits to recover forfeitures upon penal bonds; General Statutes § 6017; and that statute does not include such an action as the one before us. If we did have a general limitation upon the recovery of liabilities created by statute, we would have to construe it to harmonize with § 6005; and we might hold that it carved out from the broad provisions of that section such a case as the present one. The plaintiff also cites *Carlyle* v. *County of Oxford,* 18 D. L. R. 759, 765; but in that case the Ontario Supreme Court, citing with approval an English case in which it was held that a claim based upon a statute was an action of debt upon a specialty, held that a demand founded upon a statute was not within a limitation of actions on contracts without specialty; Ont. Stat., 10 Edw. VII, c. 34, § 49 (1) (*b*) (1910); and the decision supports a conclusion that such an action is one upon contract rather than the contrary. It has been held by courts of high authority that when a public officer has performed the services required of him an implied contract arises that he will be paid the salary fixed by law; *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131, 134, 6 S. Ct. 329, 29 L. Ed. 587; *Robertson* v. *Miller,* 276 U. S. 174, 179, 48 S. Ct. 266, 72 L. Ed. 517; and that recovery is by that action known to the common law as assumpsit. *People* v. *Mayor, etc. of New York,* 25 Wend. 680, 685; *Farwell* v. *Rockland,* 62 Me. 296, 301; *Jefferson County* v. *O'Gara,* 239 Ala. 3, 4, 195 So. 277. The following cases directly support a conclusion that such an action is within a Statute of Limitations applicable to suits upon implied contracts. *Hull* v. *Cleveland,* 79 Ohio App. 87, 70 N. E. 2d 137, 139, a case on all fours with the one before us; *County of Lancaster* v. *Brinthall,* 29 Pa. 38, 40; *Baugh* v. *Prairie County,* 66 Ark. 360, 50 S. W. 876; *State ex rel. Bradford* v.

*King County,* 197 Wash. 393, 401, 85 P. 2d 670; and see *Metropolitan R. Co.* v. *District of Columbia,* 132 U. S. 1, 13, 10 S. Ct. 19, 33 L. Ed. 231; *McHenry* v. *Lawrence,* 295 Mass. 119, 120, 3 N. E. 2d 262.

We are satisfied that both upon the basis of the true construction of our own statute and upon the weight of authority the claim of the plaintiff falls within § 6005 of the General Statutes.

In *New Haven* v. *Torrington,* 132 Conn. 194, 203, 43 A. 2d 455, we held that in an action by one municipality against another for reimbursement, under a statute, for the education of nonresident children the defendant could not successfully plead the Statute of Limitations, and if in support of that conclusion we used language not in accord with this decision, to that extent the case must be overruled.

There is no error.

In this opinion the other judges concurred.