McDONALD, J.
**348 In Longley v. State Employees Retirement Commission , 284 Conn. 149, 177-78, 931 A.2d 890 (2007), this court held that the defendant, the State Employees Retirement Commission, had improperly interpreted statutes governing retirement benefits by failing to directly add a retiree's final, prorated longevity payment to the salary earned in the retiree's final year of state employment for the purpose of calculating the retiree's base salary. Although the commission contended in Longley that it had calculated retirement benefits in accordance with its interpretation since the 1960s; id., at 166, 931 A.2d 890 ; this court afforded relief to the two plaintiffs in that case without expressing a view on whether the decision applied retroactively. Id., at 178, 931 A.2d 890. The commission subsequently ordered the recalculation and award of increased retirement benefits, in accordance with Longley , of any person who had retired, or whose benefits were not finalized, on or after October 2, 2001, the six year period preceding the date of the Longley decision. The present case raises the question of whether all state employees, irrespective of when they retired, are entitled to have their benefits recalculated in accordance with Longley .
**349 This question comes to us by way of an unusual procedural posture-a two count complaint bringing (1) an administrative appeal from the commission's decision denying a petition for a declaratory ruling filed by the plaintiffs, retirees Roger J. Bouchard, James J. Malone and James E. Fox, and (2) a declaratory judgment action on behalf of a class, represented by the plaintiffs, of all state employees who retired and began collecting pensions before October 2, 2001. The trial court granted relief to the plaintiffs in the administrative appeal, but denied relief to the class on the ground that the declaratory judgment count was time barred. The plaintiffs appealed from the trial court's judgment insofar as it denied relief for the class. The commission cross appealed from the judgment insofar as it granted relief to the plaintiffs and raised numerous alternative procedural and substantive grounds for affirming the judgment denying relief *1026 to the class. We conclude that the plaintiffs' claims for recalculation of benefits were time barred, and, for the reasons supporting that conclusion, neither they nor the class is entitled to relief. Accordingly, we affirm in part and reverse in part the trial court's judgment.
The record reveals the following undisputed facts and procedural history. The three plaintiffs retired after decades of state service-in 1990, 1997, and 2000, respectively. The commission audited and finalized their retirement benefits in April, 1994, May, 1998, and April, 2001, respectively.
On October 2, 2007, this court issued its decision in Longley . At a meeting held a few weeks after that date, the commission discussed the effect of that decision. It voted that, with the exception of the two Longley plaintiffs, calculations including the prorated longevity payments would be made only on a prospective basis for persons retiring on or after the date of that decision.
**350 In December, 2007, Bouchard sent a letter to the commission requesting recalculation of his benefits in accordance with Longley. The commission denied the request, citing its October, 2007 decision. Bouchard delayed further action while a federal class action was pending in which state retirees challenged the application of Longley on a prospective only basis and the commission's multitiered review procedures.
In the interim, the Superior Court issued a decision rejecting the commission's position that Longley applied prospectively only. See Malerba v. State Employees Retirement Commission , Superior Court, judicial district of New Britain, Docket No. HHB-CV-06-4011383 (July 15, 2008) (45 Conn. L. Rptr. 853). The court in Malerba also rejected the commission's argument that the claims in the consolidated administrative appeals before the court were time barred, noting that this defense had not been raised in the administrative proceedings. Id., at 854. The court specifically limited its holding to administrative appeals pending before the court when Longley was decided, expressing no opinion as to its retroactive application to other cases. Id., at 855 n.5.
Thereafter, in April, 2009, the commission adopted a second resolution in order to "fully conform with" the October 2, 2007 Longley decision. It directed the retirement services division of the Office of the State Comptroller to calculate and award increased retirement benefits in accordance with Longley to any person who had retired on or after October 2, 2001, or who had retired before that date but whose retirement was not finalized as of that date.
In August, 2009, after the federal class action was dismissed; see Belanger v. Blum , 628 F.Supp.2d 260, 267 (D. Conn. 2009) ; the plaintiffs followed a series of administrative steps before the commission in an **351 unsuccessful effort to challenge its limited retroactive application of Longley that excluded them and other retirees similarly situated.[1] They filed a petition for a declaratory ruling, which the commission treated as a "claim" for benefits; General Statutes § 5-155a (j) ; an appeal from the final decision denying that claim; see General Statutes § 5-155a (k) ; a request for reconsideration of the denial of the appeal; see General Statutes § 5-155a (k) ; and a second petition for a declaratory ruling as *1027 to each plaintiff, which was treated as a separate petition for each plaintiff by the commission. See General Statutes § 4-176.
The commission issued a final decision denying the plaintiffs' petitions, citing four broad conclusions as support. First, it concluded that its decision to adopt a six year limitation on recalculation was reasonable, and thus was not arbitrary or capricious. It explained that, like the approach taken for claims under federal pension law, which also contains no statute of limitations, it had looked to the most suitable time limit to apply in light of the nature of the action and the rights at issue. It found the six year limitation for actions sounding in contract to be the most suitable. See General Statutes § 52-576.
Second, relying on the six year limitation period to establish the scope of "pending" cases, the commission concluded that its decision to limit retroactive relief to pending cases was not arbitrary or capricious. It reasoned that Longley was a new interpretation of the law and that, in the absence of impermissible discrimination, it was reasonable to limit retroactive relief to pending cases.
**352 Third, it concluded that its decision to limit retroactive relief to pending cases also was proper in light of the significant adverse financial effect that unlimited retroactive application would have on the state retirement plan. The commission noted that it had construed and applied the retirement statutes; see General Statutes §§ 5-154 and 5-162 ; so as not to include the final, prorated longevity payment since 1967. The commission estimated that unlimited retroactive application of Longley would cost the retirement fund between approximately $48 million and $157 million, if statutory interest of 5 percent was applied.
Fourth, the commission concluded that the plaintiffs could not avoid the six year time bar in § 52-576 under theories of either a continuing violation of §§ 5-154 and 5-162 or a deliberate concealment of that violation. The commission deemed the continuing violation theory inapplicable as a matter of law because the retirement plan was neutral (i.e., nondiscriminatory) in operation. It rejected the allegation of wrongful concealment as unsupported by any proof and contradicted by the Appellate Court's view in Longley that the construction of § 5-162 raised a question on which there was little precedent to provide guidance. See Longley v. State Employees Retirement Commission , 92 Conn. App. 712, 717, 887 A.2d 904 (2005), rev'd in part, 284 Conn. 149, 931 A.2d 890 (2007).
Finally, the commission made clear that its ruling applied only to the three plaintiffs. It noted that the petitions had sought the recalculation of not only the plaintiffs' benefits but also the pensions of "all retirees." The commission asserted that, to the extent that the plaintiffs were attempting to bootstrap a class action onto their petitions for a declaratory ruling, the Uniform Administrative Procedure Act, **353 General Statutes § 4-166 et seq., does not permit class certification in an administrative proceeding.[2]
Following the commission's decision, the plaintiffs filed a two count "Administrative *1028 Appeal and Class Action Complaint" in the Superior Court. Count one, captioned "Administrative Appeal," alleged that the plaintiffs had been deprived of benefits owed to them by virtue of the commission's arbitrary and capricious application of its 2009 resolution imposing the six year time limitation. Count two, captioned "Declaratory Judgment for Class," incorporated the allegations in count one and alleged that, in addition to bringing their individual administrative appeal, the plaintiffs brought this action as a class action under Practice Book § 9-8. The plaintiffs subsequently filed a motion seeking to certify a mandatory class in the declaratory action (i.e., certification covering all members of the class without a procedure for members to "opt in" or "opt out" of the class).
The commission filed a motion to dismiss and/or strike the second count of the complaint, as well as an objection to class certification. The court, Hon. Howard T. Owens, Jr. , judge trial referee, concurrently issued decisions granting the plaintiffs' motion for class certification, but not as a mandatory class, and denying the commission's motion to dismiss or strike count two.
Discovery and disclosure of expert witnesses ensued, largely directed at the question of the actual financial **354 impact of a decision requiring retroactive relief for the entire class. Thereafter, the plaintiffs moved for judgment on the merits as to count one, the administrative appeal, and for summary judgment as to count two, the declaratory judgment action. The defendant filed a brief in opposition to the motion for judgment on count one, and filed its own motion for summary judgment on count two.
The court sustained the plaintiffs' administrative appeal. The court determined that the commission's decision to award increased benefits for only those persons who had retired on or after October 2, 2001, based on application of an analogous six year statute of limitations for contract claims, was arbitrary and capricious. It reasoned that the six year contract statute of limitations applied by the commission, if properly applied, would have commenced when the right of action accrued, such right accruing when Longley was decided in 2007, not six years prior to that date.[3] Having rejected the time limitation set forth in the commission's resolution, the court pointed to the absence of a statute or regulation in effect when Longley was decided that prescribed a time limit for filing a petition for a declaratory ruling with the commission. It declined to consider the commission's alternative arguments that the statute of limitations for tort actions; see General Statutes § 52-577 ; or the time limitation under a regulation the commission recently adopted[4] would apply, **355 *1029 concluding that the commission had to defend its decision on the grounds on which it was based. Nonetheless, the court concluded that, insofar as the commission relied on case law permitting the borrowing of an analogous statute of limitations to fill such a gap, that precedent did not apply to an administrative proceeding and should not apply, given the commission's authority to promulgate a regulation prescribing time limits.
In the absence of any governing time limitation, the court determined that (1) the plaintiffs' benefit awards were "pending" and not final when Longley was decided, (2) Longley presumptively applied retroactively to those pending awards; see Marone v. Waterbury , 244 Conn. 1, 10-11, 707 A.2d 725 (1998) (judgment that is not limited to prospective application is presumed to apply retroactively to pending cases); and (3) the commission had not satisfied one of the criteria necessary to overcome that presumption, namely, that "[given its prior history, purpose and effect] 'retrospective application of the rule would retard its operation ....' " See Chevron Oil Co. v. Huson , 404 U.S. 97, 106-107, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971) (prescribing three part test); see also State v. Harrell , 199 Conn. 255, 267-68, 506 A.2d 1041 (1986) (applying Chevron Oil test). But see Neyland v. Board of Education , 195 Conn. 174, 182, 487 A.2d 181 (1985) (test inapplicable **356 to jurisdictional determination). Accordingly, the trial court ordered the commission to apply Longley to the plaintiffs' retirement income calculation from the date of their retirement, as well as to pay postjudgment interest.
The court, however, rendered summary judgment in favor of the commission on the declaratory judgment count, concluding that the class' claim was time barred. In reaching this conclusion, the court acknowledged that it had applied a different analytical approach than in its resolution of the administrative appeal, which it justified on the basis of the different procedural postures of the two counts. Specifically, the court noted that case law dictates that the timeliness of a declaratory judgment action is assessed by the time limitation applicable to the underlying right being enforced in such an action. Although the statutes governing the calculation of retirement benefits contained no time limitation, the court cited case law from this court sanctioning the borrowing of an analogous statute of limitations. The court reasoned that a claim for pension benefits is more akin to a claim asserting a breach of a statutory duty, to which the tort statute of limitations applied, than to a breach of contract claim. As such, the court held that the class' claim was untimely because the three year tort statute of limitations would commence when the class members first sustained injury, i.e., when they received their finalized pension calculation, not when they discovered the wrongful act. Because the class was defined as persons collecting benefits prior to October 2, 2001, the statute of limitations would have expired long before the declaratory judgment action was commenced in 2012. The court rejected the plaintiffs' argument that the statute of limitations was tolled under a continuing violation/continuing course of conduct theory.
**357 The plaintiffs filed a motion for reargument and reconsideration of the court's *1030 ruling on the second count and its failure to award prejudgment interest, which the court denied.
The court rendered judgment in accordance with its decision. The plaintiffs appealed and the commission cross appealed from that judgment to the Appellate Court, and we thereafter transferred the case to this court. See General Statutes § 51-199 (c) ; Practice Book § 65-1.
In their appeal, the plaintiffs challenge the trial court's judgment denying the declaratory judgment count as to the class, as well as the trial court's failure to award prejudgment interest. On the merits, the plaintiffs claim that the trial court improperly failed to treat the class plaintiffs in the same manner as the individual plaintiffs. They contend that the class stands in the shoes of the class representatives and is entitled to all the rights and benefits afforded to those plaintiffs, including their exhaustion of administrative remedies and their timely initiated claims. Alternatively, the plaintiffs contend that the class' claim similarly did not accrue until the Longley decision was issued, but that the continuing violation theory would toll any applicable time limitation.
In its cross appeal, the commission claims that the trial court improperly concluded that the plaintiffs were entitled to prevail on their administrative appeal. The commission contends that the plaintiffs' claim for recalculation of their benefits was untimely under the analogous statute of limitations, that Longley does not apply retroactively, and that the commission's application of Longley to six years prior to the decision was not arbitrary or capricious. In addition, the commission asserts numerous alternative grounds, both procedural and **358 substantive, for affirming the trial court's judgment denying the class relief.
We conclude that the proper starting point of our analysis is the commission's cross appeal, as its resolution could be dispositive of the plaintiffs' appeal as well. If the commission is correct that the individual plaintiffs are not entitled to relief, then the class, too, would not be entitled to relief under the plaintiffs' argument for like treatment. Ultimately, we conclude that the plaintiffs' request to the commission for recalculation of their benefits was time barred. Accordingly, although this case raises important questions about the ability to maintain a class action in connection with administrative proceedings, we leave those questions for another day.
The sole issue on which we focus-the timeliness of the underlying administrative proceedings-potentially requires us to answer three questions. The first is whether the trial court properly determined that no time limitation applied for the plaintiffs to initiate their claims for recalculation of benefits under Longley . The second is whether the trial court properly determined that the plaintiffs' claim accrued when Longley was decided. The third is whether the trial court properly concluded that the tolling mechanism of the continuing violation theory is not applicable to the claim at issue. Although substantial deference is given to factual and discretionary determinations of administrative agencies, each of these questions is a purely legal matter over which we exercise plenary review.[5] See, e.g., **359 *1031 Maturo v. State Employees Retirement Commission , 326 Conn. 160, 171, 162 A.3d 706 (2017) ; Bridgeport Hospital v. Commission on Human Rights & Opportunities , 232 Conn. 91, 109, 653 A.2d 782 (1995).
I
At the time the plaintiffs commenced the underlying administrative proceedings, neither the State Employees Retirement Act (act), General Statutes § 5-152 et seq., nor regulations promulgated thereunder prescribed a time limitation for filing a claim for retirement benefits or a petition for a declaratory ruling. The commission contends that it was proper for it to apply an analogous statute of limitations in those proceedings to determine whether the plaintiffs' claims were timely.[6] We agree with the commission.
In Bellemare v. Wachovia Mortgage Corp. , 284 Conn. 193, 199, 931 A.2d 916 (2007), this court considered an action seeking to enforce a duty created by a statute that provided no limitation period for commencing such an action. In addressing the effect of that omission, the court set forth the following relevant principles: "Public policy generally supports the limitation of a cause of action in order to grant some degree of certainty to litigants. ... The purpose of [a] statute of limitation[s] ... is ... to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance **360 of documents or otherwise. ... Therefore, when a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued upon. " (Citations omitted; emphasis added; internal quotation marks omitted.) Id.
The rule set forth in Bellemare is one that is widely, although not universally, followed in other jurisdictions. See 51 Am. Jur. 2d, Limitation of Actions §§ 105 and 106 (2018) (actions upon statutes lacking limitation provision).
In Bellemare , the court applied this rule in the context of a judicial proceeding. We have not had the opportunity to consider whether this rule would extend to administrative proceedings. There are divergent views on this question in other jurisdictions.[7] We agree with **361 those courts that *1032 have recognized that this rule may apply to administrative proceedings and hold that it should apply in the present case.
As a general matter, we agree with those courts that have recognized that the same policy reasons for applying a statute of limitations can apply irrespective of whether the proceeding is initiated in a judicial or administrative forum. See, e.g., 3M Co. v. Browner , 17 F.3d 1453, 1457 (D.C. Cir. 1994) ("Given the reasons why we have statutes of limitations, there is no discernible rationale for applying [a statute of limitations] when the penalty action or proceeding is brought in a court, but not when it is brought in an administrative agency. The concern that after the passage of time evidence has been lost, memories have faded, and witnesses have disappeared pertains equally to [fact-finding] by a court and [fact-finding] by an agency. ... Statutes of limitations also reflect the judgment that there comes a time **362 when the potential defendant ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations .... Here again it is of no moment whether the proceeding leading to the imposition of a penalty is a proceeding started in a court or in an agency. From the potential defendant's point of view, lengthy delays upset settled expectations to the same extent in either case." [Citations omitted; internal quotations omitted.] ); Utah Consolidated Mining Co. v. Industrial Commission , 57 Utah 279, 282, 194 P. 657 (1920) ("[e]very possible reason that calls for a limitation of time in the one case applies with equal force to the other"), overruled in part on other grounds by Salt Lake City v. Industrial Commission , 93 Utah 510, 512-13, 74 P.2d 657 (1937) ; see also Manning ex rel. Manning v. Fairfax County School Board , 176 F.3d 235, 239 (4th Cir. 1999) ("[t]here is nothing to persuade us that disputes in administrative [Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. ] proceedings are so different in nature from those in judicial IDEA actions as to justify *1033 application of disparate limitations periods"). Granted, in the present case, some of the evidentiary considerations have less force, but the detrimental impact on the commission's fiduciary duties is certainly consistent with other policy considerations. Cf. Anderson v. Bridgeport , 134 Conn. 260, 266-67, 56 A.2d 650 (1947) ("[O]ne great object of statutes of limitation[s] is to prevent the unexpected enforcement of stale claims, concerning which persons interested have been thrown off their guard by want of prosecution. ... According to a more specific statement filed by the plaintiff, the total amount of all salaries claimed by those who have joined in the action to have been withheld is about $370,000. If they can now, after the lapse of so many years since the last time salaries were not paid in full, successfully assert their claims, the unfortunate results upon the financial situation of **363 the defendant city are obvious. There could rarely be an instance where the statement quoted above would so clearly apply." [Citation omitted; internal quotation marks omitted.] ).[8]
When the right being enforced is created by statute, as was the case in Bellemare , and not by regulation, there is good reason to apply the same rule irrespective of the forum in which the claim is initiated. If the plaintiffs were not required to exhaust administrative remedies and instead could seek judicial relief in the first instance, such a declaratory judgment action undoubtedly would be subject to the statute of limitations applicable, or analogous, to the underlying right sought to be vindicated. See Wilson v. Kelley , 224 Conn. 110, 116, 617 A.2d 433 (1992) (courts apply statute of limitations applicable to underlying right in declaratory judgment action). There is no reason why the exhaustion requirement should operate to eliminate that time limitation. See Marsicovetere v. Dept. of Motor Vehicles , 172 Vt. 562, 563-65, 772 A.2d 540 (2001) (reasoning that, **364 because taxpayer's exhaustion of remedies is condition precedent to judicial review of department's decision, statute of limitations should apply to administrative hearing that provides first opportunity for plaintiff to initiate action); see also Natural Resources & Environmental Protection Cabinet v. Kentucky Ins. Guaranty Assn. , 972 S.W.2d 276, 280 (Ky. App. 1997) ("[i]t would be an absurd result if, for example, the [c]abinet could commence a proceeding before a hearing officer of the [c]abinet on a cause of action which arose ten years earlier, even though the action would be barred by the statute of limitations in every other tribunal of the [c]ommonwealth" *1034 [internal quotation marks omitted] ).
This conclusion is bolstered by other evidence. After administrative remedies are exhausted, the legislature has prescribed a short period of time to appeal from an adverse administrative decision to the Superior Court. See General Statutes § 4-183 (c) (1) (prescribing forty-five days to appeal final decision). It is difficult to square this expression of legislative intent with one intending an unlimited period to commence the administrative proceedings giving rise to such an appeal. Cf. Skrundz v. Review Board of Indiana Employment Security Division , 444 N.E.2d 1217, 1221, 1223 (Ind. App. 1983) (regulation providing that specified individuals " 'may apply at any time' " to state agency for trade readjustment allowance evidenced clear intention not to apply any time limitation). We also observe that, although not dispositive, the regulation adopted by the commission in 2012 prescribing time limits for challenging retirement benefits; see footnote 4 of this opinion; that is consistent with the period of limitation applied in the present case, has been sanctioned by the legislature. See General Statutes § 4-170 (review, approval, and disapproval without prejudice by bipartisan Legislative Regulation Review Committee);
**365 General Statutes § 4- 171 (review by General Assembly of regulations disapproved by Legislative Regulation Review Committee).
We recognize that courts in some jurisdictions have not applied analogous statutes of limitations to administrative proceedings when such statutes refer to a "civil action" or an "action," as do ours, because the common meaning ascribed to those terms refers to judicial proceedings. See, e.g., Oakland v. Public Employees' Retirement System , 95 Cal. App. 4th 29, 48, 115 Cal.Rptr.2d 151 (2002) ; In re Wage & Hour Violations of Holly Inn, Inc. , 386 N.W.2d 305, 307-308 (Minn. App. 1986) ; Guthmiller v. North Dakota Dept. of Human Services , 421 N.W.2d 469, 471 (N.D. 1988) ; Morgan v. Dept. of Commerce, Division of Securities ,414 P.3d 501, 503, 2017 WL 6154336, *3 (Utah App. 2017). We agree with those courts that do not consider that term dispositive. See, e.g., Manning ex rel. Manning v. Fairfax County School Board , supra, 176 F.3d at 236-39 ; Anawan Ins. Agency, Inc. v. Division of Ins. , 459 Mass. 592, 597, 946 N.E.2d 688 (2011) ; Marsicovetere v. Dept. of Motor Vehicles , supra, 172 Vt. at 563-65, 772 A.2d 540. Neither our statutes nor our case law provides a definition of "action" that would preclude application of our statutes of limitations in this manner.[9] See Carbone v. Zoning Board of Appeals , 126 Conn. 602, 604-605, 13 A.2d 462 (1940) ("In a general sense the word action means the lawful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides. ... However, the word action has no precise meaning and the scope of proceedings which will be included within the term as used in the statutes depends upon the nature and purpose of the particular statute in question." [Citations **366 omitted; internal quotation marks omitted.] ); see also Metcalfe v. Sandford , 271 Conn. 531, 538, 858 A.2d 757 (2004) (same); Gipson v. Commissioner of Correction , 257 Conn. 632, 641, 778 A.2d 121 (2001) ("[b]ecause the word action may have different meanings in different contexts ... we [take] a functional approach in our construction of the [word], eschewing *1035 the application of inflexible rules in favor of a contextual analysis" [internal quotation marks omitted] ).
We also are not persuaded by the trial court's view that the commission's failure to exercise authority delegated to it to promulgate a regulation prescribing a time limitation-prior to the proceedings at issue-precludes resort to the statutory analogue. That logic could apply equally to the statutory context; nonetheless, we borrow analogous statutes of limitations when the legislature could have, but failed to, adopt an express limitation in the statute creating the action. Our research has not revealed any other jurisdiction that has relied on that consideration to decide this issue.
This is not to say that a time limitation will be borrowed in every instance in which one is not expressly provided. The courts should consider the nature of the proceeding and all relevant textual evidence to determine whether the legislature did not intend for any time limitation to apply. Moreover, a time limitation will apply by analogy only when that analogy is apt and its application is consistent with the policies underlying the administrative scheme. When there is ambiguity as to which statute of limitations is apt, courts should apply the longer of the two. See 51 Am. Jur. 2d, supra, § 76 (rule favoring longest limitation period).
Applying these principles to the present case, there is no reason to conclude that our legislature intended to allow retirees to challenge the commission's method of calculating their retirement benefits decades after **367 they started to receive benefits. Indeed, an unlimited period to advance such claims could cause financial and administrative hardship. Notably, the plaintiffs conceded in the administrative proceedings that a statute of limitations would apply to the administrative proceeding, disputing only when the cause of action would accrue and whether tolling applied.[10]
As to whether there is an analogous statute of limitations, in the proceedings before the commission, both parties agreed that the six year statute of limitations for contract actions under § 52-576 applied to the right at issue. Although the commission advocated for application of the shorter limitation period for tort actions before the trial court, we conclude that the longer period should apply, given the commission's position throughout the administrative proceedings, the rule requiring any ambiguity to favor the longer period, and the weight of authority applying the contract period. Compare Harrison v. Digital Health Plan , 183 F.3d 1235, 1240 (11th Cir. 1999) ("[a] survey of decisions from other circuits shows that almost without exception, federal courts have held that a suit for [Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. ] ) benefits pursuant to [the civil enforcement section of ERISA]
*1036 should be characterized **368 as a contract action for statute of limitations purposes"), and Johnson v. State Mutual Life Assurance Co. of America , 942 F.2d 1260, 1261-62 (8th Cir.1991) (action for ERISA benefits should be characterized as contract action for statute of limitations purposes unless breach of ERISA trustee's fiduciary duties is alleged), with Bellemare v. Wachovia Mortgage Corp. , supra, 284 Conn. at 200, 931 A.2d 916 ("courts have held that, when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort").
II
Having concluded that the six year time limitation for contract actions applies to the plaintiffs' Longley claims, we next must consider when the plaintiffs' right of action accrued so as to commence the running of that period. We conclude that this right accrued when the plaintiffs' claims for retirement benefits were approved and finalized.[11]
Our law construing accrual under § 52-576 is well settled. "[I]n an action for breach of contract ... the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. ... Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." (Internal quotation **369 marks omitted.) Amoco Oil Co. v. Liberty Auto & Electric Co. , 262 Conn. 142, 153, 810 A.2d 259 (2002).
"Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand.... Cf. Vaughn v. State Farm Mutual Automobile Ins. Co. , 445 So.2d 224, 226 (Miss. 1984) ( [A] cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.... [A] cause of action must be complete before it can be said to have accrued....). While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Citations omitted; internal quotation marks omitted.) Polizos v. Nationwide Mutual Ins. Co. , 255 Conn. 601, 608-609, 767 A.2d 1202 (2001) ; see also Heimeshoff v. Hartford Life & Accident Ins. Co. , 571 U.S. 99, 134 S.Ct. 604, 610, 187 L.Ed. 2d 529 (2013) ("[a]s a general matter, a statute of limitations begins to run when the cause of action accrues-that is, when the plaintiff can file suit and obtain relief" [internal quotation marks omitted] ).
Under this law, the plaintiffs' claims accrued when their applications for retirement benefits were approved and finalized. The statutory scheme in its then existing form afforded them the right to have their final longevity payment directly included in the calculation of their base salary. See General Statutes § 5-152 et seq. Thus, the breach occurred when the calculation was made without including that payment.
*1037 Contrary to the view of the trial court and the plaintiffs, our decision in Longley did not establish the earliest date on which the plaintiff first could have **370 successfully maintained an action. That view assumes that the plaintiffs could not have prevailed before the commission in light of its long-standing, but improper, interpretation of the act, which they equate with an inability to successfully maintain an action for recalculation of their benefits. This syllogism is wrong as a matter of fact and law. The commission's interpretation of the act had not been challenged, administratively or judicially, as of the time the plaintiffs retired. In any event, the court, not the commission, is the final arbiter of what the law is. This court's interpretation of the act evidenced what the law always meant; the law did not change as a consequence of that interpretation. See Luurtsema v. Commissioner of Correction , 299 Conn. 740, 749-50 n.11, 12 A.3d 817 (2011) (distinguishing decision that changes law from one that provides clarification of what law always has meant); see also Longley v. State Employees Retirement Commission , supra, 284 Conn. at 177 n.23, 887 A.2d 904 ("because the commission's interpretation lacks statutory support, we would not endorse that interpretation even if it were entitled to deference").[12] The phrase "successfully maintain an action" refers to the time at which the facts exist (or allegedly exist) to establish the legal elements of the cause of action. See Polizos v. Nationwide Mutual Ins. Co. , supra, 255 Conn. at 608-13, 767 A.2d 1202. At the time the plaintiffs received their final audit and began receiving retirement benefits, all of the operative facts to successfully assert a claim under the act existed-they had met the conditions for retirement, they had received a final longevity payment, and that payment was not included in their benefit calculation. **371 Under the foregoing principles, the plaintiffs' claims accrued when their retirement benefits were approved and finalized.[13] As we previously indicated, the commission finalized the plaintiffs' retirement benefits in April, 1994, May, 1998, and April, 2001, respectively. Barring any basis to toll the statute of limitations or to change the accrual date, the statute of limitations on their claims would have expired *1038 in April, 2000, May, 2004, and April, 2007, respectively. Bouchard filed the first request for recalculation in December, 2007. The first claim filed on behalf of the other two plaintiffs was filed in August, 2009.
III
All that is left to decide is whether the trial court properly determined that the continuing violation theory invoked by the plaintiffs did not apply to render their claims timely. The plaintiffs claim that there was a continuing violation that tolled the statute of limitations because they continued to receive payments that did not comply with the act. They contend that their position is supported by **372 State v. Commission on Human Rights &Opportunities , 211 Conn. 464, 559 A.2d 1120 (1989) ( CHRO ), and Watts v. Chittenden , 301 Conn. 575, 22 A.3d 1214 (2011). We disagree.
"The critical distinction in the continuing violation analysis ... is whether the plaintiffs complain of the present consequence of a one time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does." (Internal quotation marks omitted.) Knight v. Columbus, 19 F.3d 579, 580-81 (11th Cir.), cert. denied, 513 U.S. 929, 115 S.Ct. 318, 130 L.Ed. 2d 280 (1994). In CHRO , this court applied the continuing violation theory in the context of a claim that the plaintiff state employer had engaged in a discriminatory practice by paying smaller pension benefits to male teachers than female teachers as a result of using gender-based actuarial tables for calculating benefits. CHRO , supra, 211 Conn. at 466-67, 472-77, 559 A.2d 1120. The court concluded that each payment of retirement benefits constituted a separate discriminatory act in violation of the state's antidiscrimination statute. Id., at 476, 559 A.2d 1120. In so concluding, the court deemed case law controlling in which it had recognized that "discrete incidents occurring during a continuum of discriminatory employment practices may constitute fresh violations of [the applicable anti-discrimination statute]." (Emphasis added.) Id., at 473, 559 A.2d 1120. It contrasted this type of ongoing discrimination with cases in which a past act of discrimination impacted an otherwise neutral pension or benefits scheme, the latter not constituting a continuing violation. Id., at 473-74, 559 A.2d 1120. This court has never relied on this case outside of the context of employment discrimination, and we do not view a misinterpretation of pension law as giving rise to a similar continuing expression of unlawful policy. Therefore, CHRO does not support application of the continuing violation theory to the present case.
**373 We acknowledge that some courts in other jurisdictions, although not cited by the plaintiffs, have treated cases of this ilk as a continuing violation under the view that pension benefits are similar to instalment contracts, rendering each "instalment" for less than owed its own breach. See, e.g., Green v. Obledo , 29 Cal. 3d 126, 141, 624 P.2d 256, 172 Cal.Rptr. 206 (1981) ; Bishop v. State, Division of Retirement , 413 So.2d 776, 777-78 (Fla. App 1982) ; Harris v. Allen Park , 193 Mich. App. 103, 107, 483 N.W.2d 434 (1992). Many other courts, however, have rejected this view. See, e.g., Novella v. Westchester County , 661 F.3d 128, 146 (2d Cir. 2011) ; Miller v. Fortis Benefits Ins. Co. , 475 F.3d 516, 522 (3d Cir. 2007) ; Edes v. Verizon Communications, Inc. , 417 F.3d 133, 139-40 (1st Cir. 2005) ; Lang v. Aetna Life Ins. Co. , 196 F.3d 1102, 1105 (10th Cir. 1999) ; Pisciotta v. Teledyne Industries, Inc. , 91 F.3d 1326, 1332 (9th Cir. 1996) ; Beggs v. Portales , 305 P.3d 75, 81-83 (N.M. App. 2013). One reason cited is that it undermines the purposes of a statute of limitations. See Miller v. Fortis Benefits Ins. Co. , supra, at 522 (rejecting continuing violation theory on *1039 ground that it would give rise to indefinite limitation period); Lang v. Aetna Life Ins. Co. , supra, at 1105 ("Under [the] plaintiff's characterization [of her disability policy as an instalment contract], her claim would have an indefinite lifespan. Such a result would undermine the overriding purpose of a statute of limitation[s]."). Another reason cited is that it runs counter to the well settled proposition that a single decision that results in lasting negative effects is not a continuing violation. See Novella v. Westchester County , supra, at 146 ; Beggs v. Portales , supra, at 81-83. We agree with those courts that would not view a nondiscriminatory miscalculation of a pension benefit as a continuing violation.
The plaintiffs' reliance on Watts v. Chittenden , supra, 301 Conn. at 575, 22 A.3d 1214, does not persuade us otherwise. As best **374 we can understand their argument, it is that a continuing violation can be found when there are repeated wrongs arising from a "special relationship" between a plaintiff and a defendant, which, in the present case, the plaintiffs characterize as a fiduciary relationship between retirees and the commission. A fair and complete reading of Watts , however, does not support this view of the continuing violation theory; Watts is a case that is more accurately characterized as involving the "continuous course of conduct" theory of tolling.[14] Id., at 577, 22 A.3d 1214.
The continuous course of conduct doctrine generally requires proof that "the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) Martinelli v. Fusi , 290 Conn. 347, 357, 963 A.2d 640 (2009). "Where we **375 have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Watts v. Chittenden , supra, 301 Conn. at 584, 22 A.3d 1214. The plaintiffs have not identified a single case in which any court has deemed pension administration to create such a special relationship or more generally applied the continuous *1040 course of conduct doctrine to such cases, despite the many hundreds of pension cases involving application of statutes of limitations and tolling. We also observe that neither of the policy reasons cited by this court in support of this theory of tolling applies to the present case. See id., at 591, 22 A.3d 1214 ( [1] "it would be inequitable for the limitations period to begin to run when a plaintiff is incapable of bringing an action because he or she is under the control of the defendant and is thus unable to bring an action," and [2] "it may serve the interest of judicial economy to toll the statute of limitations in cases involving ... close personal relationships [such as attorney-client] in order to allow the involved parties the opportunity to work out their dispute rather than requiring a plaintiff to commence an action immediately"). Therefore, the plaintiffs also have not made a case for applying the continuous course of conduct doctrine to toll accrual of their causes of action in the present case.
In sum, we conclude that a six year time limitation applicable to the plaintiffs' claims expired before they commenced the present administrative proceedings. Because there is no independent basis on which the class' claim can proceed, its claims fail for the same reason that the individual plaintiffs' claims fail.
**376 The judgment is reversed in part and the case is remanded with direction to render judgment for the commission on the administrative appeal; the judgment is affirmed in all other respects.
In this opinion the other justices concurred.

The plaintiffs characterized their adherence to these procedures as being taken under protest, as it was their view that the commission had stated its formal position in its April, 2009 resolution and should not require them to follow a multistep review process, which had not been formally enacted. The propriety of those procedures is not at issue in this appeal.

Although we do not reach the commission's procedural and substantive challenges relating to the class, we note that the commission's position at oral argument before this court contradicted the position in its decision. At oral argument, it contended that one of its regulations provides a "mechanism for a class action," specifically, § 5-155a-1 (b) (6) of the Regulations of Connecticut State Agencies, and faulted the plaintiffs for failing to request information from the commission under the Freedom of Information Act, General Statutes § 1-200 et seq., to identify and provide notice to the putative class members in accordance with that regulation.

The court also concluded that the commission could not properly choose an arbitrary cutoff date due to concerns about the financial impact of full retroactive application of Longley , the extent of which the plaintiffs had called into question, when the law regarding retroactivity did not support such a limitation.

Section 5-155a-2 of the Regulations of Connecticut State Agencies took effect on April 27, 2012, the same day that the plaintiffs filed their administrative appeal and class action complaint. That regulation provides in relevant part: "(a) No action at law or in equity may be brought to recover under the State Employee Retirement System (SERS) or any of the retirement systems administered, supervised or managed by the State Employees Retirement Commission ('Commission') any benefit, Tier transfer, service credit or any other related retirement benefit or payment (including but not limited to over or under payments) or claim challenging the alleged failure of the Commission to abide by a statutory dictate after the expiration of six (6) years after the member first knew or should have known with reasonable diligence of his or her entitlement to such a benefit, Tier transfer, service credit or other related retirement benefit or payment (including but not limited to over or under payments) or any claim challenging an alleged failure of the Commission to abide by a statutory dictate. Claims not brought within this time frame shall be denied as untimely.
"(b) Before pursuing legal action, a person claiming retirement benefits or seeking redress related to the retirement system(s) shall first exhaust the Commission's claim, review and appeal procedures...." Regs., Conn. State Agencies § 5-155a-2.

The plaintiffs and the defendant have raised many arguments that we have not specifically addressed, as the three broader questions we have posed subsume the central, and dispositive, matters. To the extent that the plaintiffs raised certain arguments solely in conjunction with the class, such as tolling under the continuing violation theory, we have assumed that this argument likewise applies to the defendant's challenge to the timeliness of the individual plaintiffs' claims.

The plaintiffs have not responded directly to this argument. Instead, they make an argument that, if a statute of limitations applies, the claim in the present case is more like a contract action and is distinguishable from the claim at issue in the case on which the defendant relies.

Broadly characterized, the approaches of other jurisdictions to the question of whether this rule applies to administrative proceedings fall into the following categories:
(1) categorical rejection; see, e.g., Oakland v. Public Employees' Retirement System , 95 Cal. App. 4th 29, 48, 115 Cal.Rptr.2d 151 (2002) ; Autio v. Proksch Construction Co. , 377 Mich. 517, 521-25, 141 N.W.2d 81 (1966) ; In re Wage & Hour Violations of Holly Inn, Inc. , 386 N.W.2d 305, 307-308 (Minn. App. 1986) ; Morgan v. Dept. of Commerce, Division of Securities , Docket No. 20160091-CA, 2017 WL 6154336, *2 (Utah App. December 7, 2017) ;
(2) presumption favoring application; see, e.g., Sahu v. Iowa Board of Medical Examiners , 537 N.W.2d 674, 676 (Iowa 1995) ; State Board of Retirement v. Woodward , 446 Mass. 698, 707, 847 N.E.2d 298 (2006) (citing additional cases); Marsicovetere v. Dept. of Motor Vehicles , 172 Vt. 562, 563-65, 772 A.2d 540 (2001) ;
(3) application of the rule when there is a general or "catch-all" type of statute of limitations; see, e.g., Manning ex rel. Manning v. Fairfax County School Board , 176 F.3d 235, 236-39 (4th Cir. 1999) ; Murphy v. Timberlane Regional School District , 22 F.3d 1186, 1192-93 (1st Cir. 1994) ; 3M Co. v. Browner , 17 F.3d 1453, 1455-57 (D.C. Cir. 1994) ; Utah Consolidated Mining Co. v. Industrial Commission , 57 Utah 279, 281, 194 P. 657 (1920), overruled in part on other grounds by Salt Lake City v. Industrial Commission , 93 Utah 510, 512-13, 74 P.2d 657 (1937) ; and
(4) application to claims that are a substitute for a common-law predecessor to, or counterpart of, the administrative action. See, e.g., Hames v. Miami Firefighters' & Police Officers' Trust , 980 So.2d 1112, 1115-16 (Fla. App. 2008) ; Scott Tobacco Co. v. Cooper , 258 Ky. 795, 799, 81 S.W.2d 588 (1934) ; Natural Resources & Environmental Protection Cabinet v. Kentucky Ins. Guaranty Assn. , 972 S.W.2d 276, 281 (Ky. App. 1997) ; Federal Rubber Co. v. Industrial Commission , 185 Wis. 299, 300-301, 201 N.W. 261 (1924).
We observe that there is greater consensus that no statute of limitations will be applied to such proceedings when they are initiated by the government for the public interest, especially professional disciplinary proceedings. See N. Harlow, annot., "Applicability of Statute of Limitations or Doctrine of Laches to Proceeding to Revoke or Suspend License to Practice Medicine," 51 A.L.R.4th 1147, 1151 (1987) ; 51 Am. Jur. 2d, supra, § 44. We also note that jurisdictions that do not apply a statute of limitations by analogy may nonetheless apply it in considering a laches defense. See, e.g., Fountain Valley Regional Hospital & Medical Center v. Bonta , 75 Cal. App. 4th 316, 324, 89 Cal.Rptr.2d 139 (1999) ( "[i]n cases in which no statute of limitations directly applies [such as administrative proceedings] but there is a statute of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit of reasonable delay in determining laches" [internal quotation marks omitted] ); Farzad v. Dept. of Professional Regulation , 443 So.2d 373, 375-76 (Fla. App. 1983) ("[h]aving found that the statute of limitations is not applicable, we are persuaded that the parallel concept, the doctrine of laches, usually utilized in equitable proceedings, is similarly inapplicable to this administrative license revocation proceeding").

Anderson v. Bridgeport , supra, 134 Conn. at 260, 56 A.2d 650, includes an early view of this court regarding the borrowing of a statute of limitations that is contrary to the one set forth in Bellemare . See id., at 262-63, 56 A.2d 650 (stating, when considering whether statute of limitations raised as defense applied to action at issue, that "we must seek the true meaning of the specific language it contains and we may not extend it to include situations merely because we think they are analogous to those designated in it"). Bellemare did not address Anderson . Since the latter decision was issued in 1947, however, this court has cited to that aspect of Anderson only for the broader rule of statutory construction that "[i]t is not the role of this court to extend the language of a statute to apply to situations analogous to those specified in the statute." Doe v. Manson , 183 Conn. 183, 187-88, 438 A.2d 859 (1981) ; see id., at 184, 188, 438 A.2d 859 (applying proposition in considering whether "court records" in General Statutes [Rev. to 1981] § 54-142a [d], which provides for erasure of police, court, and state's or prosecuting attorney records pertaining to individual who had been pardoned, includes all records in custody of Department of Correction pertaining to plaintiff's imprisonment). Accordingly, although the general proposition articulated in Anderson is good law, its application to statutes of limitations has been implicitly overruled by Bellemare .

Practice Book § 14-6 makes clear that administrative appeals are civil actions, but is silent as to underlying administrative petitions , presumably because our rules of practice do not govern such underlying petitions.

The plaintiffs made this concession several times. For example, in a 2009 letter stating the grounds for their appeal from the commission's final decision, the plaintiffs stated: "The [retirement services] division correctly assumes that the [six] year limitations period for written contracts ... in § 52-576... applies to the obligation to pay pension benefits. But the division wrongly assumes that the six year period runs from the date [the] claimants retired." In the 2011 hearing on their request for reconsideration by the commission, the plaintiffs reiterated that position, stating at the outset: "We agree that the correct assumption for the commission, and prior to that, the division, is that the six year statute of limitations under [§] 52-576 does apply to the obligation to pay pension benefits." For reasons that are not clear, the commission did not argue before the trial court or this court that the plaintiffs had waived a claim that § 52-576 did not apply to their administrative claims.

In their reply brief to this court, the plaintiffs contend that "[t]he commission said it used the date the Supreme Court decided Longley as the date any claims against it accrued." This assertion is not supported by the commission meeting minutes cited by the plaintiffs. Rather, those minutes reflect that the commission assumed that the six year statute of limitations applied to a claim for benefits under Longley and subtracted six years from the date of that decision to determine the earliest point in time that an accrued claim would be timely.

We need not decide in the present case whether our decision in Longley would meet the first of the three criteria for deeming a judicial decision to apply prospectively only. See Neyland v. Board of Education , supra, 195 Conn. at 179, 487 A.2d 181 ("the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed" [citation omitted; internal quotation marks omitted] ).

Although we are mindful that some jurisdictions have effectively applied some form of discovery rule in pension cases; see Novella v. Westchester County , 661 F.3d 128, 144-48 (2d Cir. 2011) (discussing various approaches to accrual issue in context of pension miscalculation); we need not consider in the present case whether to adopt such an approach. The plaintiffs have not advanced that argument on appeal. Moreover, they presented no evidence to establish that the information made available to them when they applied for and received their retirement benefits was insufficient to alert them that their final longevity payment was not included in their benefit calculation. Furthermore, we take judicial notice of the fact that the record in Longley reflects that those plaintiffs had gleaned this fact from the retirement application form itself. See Karp v. Urban Redevelopment Commission , 162 Conn. 525, 527, 294 A.2d 633 (1972) (court may take judicial notice of files in other cases). The ready availability of this information also is evidenced by the fact that, at the time Longley was pending before this court, four other cases raising similar challenges were pending before the Superior Court. See Malerba v. State Employees Retirement Commission , supra, 45 Conn. L. Rptr. 853.

Although this court has on occasion used both terms in a manner that would imply that they are interchangeable; see, e.g., Watts v. Chittenden , supra, 301 Conn. at 587, 22 A.3d 1214 ; the difference between these theories is not simply the circumstances in which they apply, but also the scope of recovery they afford. When there is a continuing violation, each breach gives rise to a new statute of limitations, and the plaintiff is entitled to recover for only those breaches that occurred within the statute of limitations. See Knight v. Columbus, supra, 19 F.3d at 581 ("[w]here a continuing violation is found, the plaintiffs can recover for any violations for which the statute of limitations has not expired"); see also State v. Commission on Human Rights & Opportunities , supra, 211 Conn. at 472-73, 559 A.2d 1120. Thus, if that theory had applied in the present case, the plaintiffs would be entitled to increased awards only for the six year period preceding the filing of their claim, as well as prospective relief. Conversely, when there is a continuing course of conduct, the accrual of the cause of action is delayed, and the plaintiff is entitled to recover the full extent of his or her injuries, irrespective of when they commenced. See Handler v. Remington Arms Co. , 144 Conn. 316, 321, 130 A.2d 793 (1957) ("[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed"); see also Watts v. Chittenden , supra, at 596, 22 A.3d 1214 ; see generally Aryeh v. Canon Business Solutions , Inc. , 55 Cal. 4th 1185, 1197-1200, 292 P.3d 871, 151 Cal.Rptr.3d 827 (2013) (explaining difference between continuing violation and continuing course of conduct theories, and that latter is referred to as "continuous accrual" theory).